Teresa H. Michaud (State Bar No. 296329)
  teresa.michaud@bakermckenzie.com
Sara Victoria M. Pitt (State Bar No. 317611)
  sara.pitt@bakermckenzie.com
Paul Chander (State Bar No. 305133)
  paul.chander@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:     +1 310 201 4728
Facsimile:     +1 310 201 4721

Desirée N. Hunter-Reay (State Bar No. 337150)
  desiree.hunter-reay@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, California  94111
Telephone:     +1 415 576 3000
Facsimile:     +1 415 576 3099

Attorneys for Defendants
FUNPLUS INTERNATIONAL AG and
KINGSGROUP HOLDINGS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA PRADO, ET AL.,<br>             Plaintiffs,<br>     v.<br>FUNPLUS INTERNATIONAL AG,<br>a Swiss Public Limited Company, and<br>KINGSGROUP HOLDINGS, a Cayman Islands<br>corporation,<br>             Defendants.<br>_____<br>YOVANNI YANEZ, ET AL.,<br>             Plaintiffs,<br>     v.<br>FUNPLUS INTERNATIONAL AG, ET AL.,<br>             Defendants.<br>_____<br>LOREN KELLY,<br>             Plaintiff,<br>     v.<br>FUNPLUS INTERNATIONAL AG, ET AL.,<br>             Defendants. | Case No. 4:22-cv-05023-YGR<br>Case No. 4:23-cv-02667-YGR<br>Case No. 4:23-cv-04122-YGR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMNIBUS MOTION TO DISMISS *PRADO*, *YANEZ*, AND *KELLY* COMPLAINTS UNDER FEDERAL RULES OF CIVIL PROCEDURE RULES 12(B)(2) AND 12(B)(6), AND THE DOCTRINE OF *FORUM NON CONVENIENS***<br><br>Date:   February 20, 2024<br>Time:  2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1<br>4th Floor - Oakland Courthouse<br>1301 Clay Street, Oakland, CA  94612 |

# **TABLE OF CONTENTS**

Page No.

I.     INTRODUCTION ................................................................................................ 1

II.    ALLEGED FACTS AND RELEVANT PROCEDURAL BACKGROUND ...................... 2

    A.     The FunPlus Defendants ................................................................................ 2

    B.     The FunPlus Terms of Use ............................................................................ 4

    C.     The *Prado* Plaintiffs and the "State of Survival" Mobile Gaming
           Application.......................................................................................................... 5

    D.     The *Yanez* Plaintiffs and the "Frost & Flame: King of Avalon" Mobile
           Gaming Application.......................................................................................... 6

    E.     The *Kelly* Plaintiffs and the "Guns of Glory: Lost Island" Mobile Gaming
           Application.......................................................................................................... 7

    F.     Procedural Background..................................................................................... 8

III.   LEGAL STANDARDS ......................................................................................... 8

    A.     Under Rule 12(b)(2), Plaintiffs are Required to Establish Personal
           Jurisdiction as to Each Defendant for Each Claim Asserted ...................... 8

    B.     Under the Doctrine of *Forum Non Conveniens*, Dismissal is Appropriate
           Where Parties Contractually Agree to Another Forum................................. 9

    C.     Under Rule 12(b)(6), Plaintiffs are Required to Plead the *Prima Facie*
           Elements for Each Claim Asserted ............................................................. 10

IV.    ARGUMENT ...................................................................................................... 10

    A.     The Complaints Should Be Dismissed under Rule 12(b)(2) Because the Court
           Lacks Personal Jurisdiction Over KingsGroup and FunPlus AG ............................ 10

          1.     Neither KingsGroup nor FunPlus AG are "at home" in California .............. 12

          2.     Neither KingsGroup nor FunPlus AG has sufficient "minimum
               contacts" with the forum to justify the exercise of specific personal
               jurisdiction ................................................................................................. 14

    B.     Plaintiffs' Claims Should Be Dismissed for Improper Venue, to Be Refiled
           in Individual Arbitration or the Courts of Zug, Switzerland .................................. 15

          1.     FunPlus AG's Terms require that disputes are resolved through
               binding, individual arbitration .................................................................... 16

          2.     To the extent the arbitration agreement is unenforceable as to
               any Plaintiffs, their only alternative venue is the court in Zug,
               Switzerland ................................................................................................. 20

C.    The Complaints Each Fail to State a Claim for Relief and Should Be Dismissed Under Rule 12(b)(6) ................................**Error! Bookmark not defined.**

    1.    Plaintiffs' California statutory claims should be dismissed as to all Non-California Plaintiffs ...............................**Error! Bookmark not defined.**

    2.    Plaintiffs' claims under New York, Pennsylvania, and Washington Law are not properly raised among entirely foreign parties in California court ........................................................................... 25

    3.    The *Prado*, *Yanez*, and *Kelly* Complaints each fail to meet the heightened pleading standard for claims sounding in fraud ...................... 25

    4.    Plaintiffs fail to state a cognizable claim of false advertising ..................... 26

    5.    Plaintiffs fail to state a claim for common law fraud................................... 30

    6.    Plaintiffs fail to state a claim for relief under the CLRA............................. 31

        a.    Virtual Items and Digital Content are not "goods" or "services" as defined by the CLRA…………………………………32

    7.    Plaintiffs fail to state a claim for relief under the UCL ............................. 34

        a.    Plaintiffs fail to allege they suffered an actionable economic injury and thus lack statutory standing under the UCL…………….35

        b.    Plaintiffs fail to allege FunPlus's conduct was unlawful………...36

        c.    Plaintiffs' allegations of "unfairness" are based on the same conduct alleged under the "unlawful" prong………………………..37

        d.    Plaintiffs fail to allege FunPlus's conduct was fraudulent………….38

    8.    Plaintiffs fail to state a claim for relief under N.Y. Gen. Bus. Law §§ 349 and 350 (*Prado* and *Yanez* New York Subclasses only)........................ 38

    9.    Plaintiffs fail to state a claim for relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (*Prado* Pennsylvania Subclass only) ............................................................................................. 40

    10.    Plaintiffs fail to establish that Defendants were unjustly enriched by their alleged conduct .................................................................................. 41

V.    CONCLUSION.................................................................................................... 41

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,*
  368 F.3d 1174 (9th Cir. 2004) ..................................................................................... 9

5

6

*Am. Express Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013) ................................................................................................... 20

7

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,*
  551 F.2d 784 (9th Cir. 1977) ............................................................................... 11, 13

8

9

*Amberger v. Legacy Capital Corp.,*
  No. 16-cv-05622-JSC, 2017 U.S. Dist. LEXIS 8392 (N.D. Cal. Jan. 20, 2017) .......... 21

10

11

*Amiri v. Dyncorp Int'l,*
  No. 14-CV-03333 SC, 2015 U.S. Dist. LEXIS 3981 (N.D. Cal. Jan. 13, 2015) .......... 14

12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... 10

13

14

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ................................................................................................... 10

15

16

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ................................................................................................... 19

17

*AT&T Techs., Inc. v. Commc'n Workers of Am.,*
  475 U.S. 643 (1986) ................................................................................................... 18

18

19

*Atl. Marine Constr. Co. v. United States Dist. Ct.,*
  571 U.S. 49 (2013) ............................................................................................. *passim*

20

21

*Balzer v. Wal-Mart Stores, Inc.,*
  No. CV 14-9779-JFW, 2015 U.S. Dist. LEXIS 25714 (C.D. Cal. Feb. 25, 2015) ........ 41

22

*Baron v. Pfizer, Inc.,*
  840 N.Y.S.2d 445 (3d Dep't 2007) ............................................................................. 39

23

24

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................... 33

25

26

*Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA, Inc.,*
  No. 12cv1572, 2013 U.S. Dist. LEXIS 102999 (W.D. Pa. July 23, 2013) ................... 40

27

*C.W. v. Epic Games,*
  No. 19-cv-03629-YGR, 2020 U.S. Dist. LEXIS 162490 ............................................. 34

28

iii

*Churchill Vill., LLC v. GE Co.*,
 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................................ 23, 25

*Coffee v. Google, LLC*,
 No. 20-CV-03901-BLF, 2022 U.S. Dist. LEXIS 4791 (N.D. Cal. Jan. 10, 2022) ............ 30, 31, 38

*Commonwealth v. Golden Gate Nat'l Senior Care, LLC*,
 194 A.3d 1010 (Pa. 2018) ......................................................................... 41

*Cooper v. Slice Techs., Inc.*,
 No. 17-cv-02340-LB, 2017 U.S. Dist. LEXIS 149480 (N.D. Cal. Sep. 14, 2017) ................ 21

*Cosmo Imp. & Exp., LLC v. Reliant Grp. & Cas. Ins. Icc*,
 No. 8:21-cv-00657-JVS, 2021 U.S. Dist. LEXIS 250684 (C.D. Cal. Oct. 27, 2021) ................ 22

*Coy v. Lilith Games (Shanghai) Co.*,
 No. 19-cv-08192-JD, 2022 U.S. Dist. LEXIS 142625 (N.D. Cal. Aug. 9, 2022) ................ 36

*Crawford v. Beachbody, LLC*,
 No. 14cv1583-GPC(KSC), 2014 U.S. Dist. LEXIS 156658
 (S.D. Cal. Nov. 5, 2014) ....................................................................... 18, 19

*DaCorta v. Am. Retail Grp., Inc.*,
 No. 16-CV-1748 (NSR), 2018 U.S. Dist. LEXIS 10733 (S.D.N.Y. Jan. 23, 2018) ................ 39

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ........................................................................... 10, 12

*Dang v. Samsung Elecs. Co.*,
 No. 14-CV-00532-LHK, 2018 U.S. Dist. LEXIS 204471 (N.D. Cal. Dec. 3, 2018) ................ 35

*Dean Witter Reynolds Inc. v. Byrd*,
 470 U.S. 213 (1985) ............................................................................ 17

*DeVries v. Experian Info. Sols., Inc.*,
 No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017) ............ 18, 19

*DIRECTV, Inc. v. Imburgia*,
 577 U.S. 47 (2015) ............................................................................. 17

*Doe v. Epic Games, Inc.*,
 435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................... 32, 33, 34

*Doe v. Roblox*,
 602 F. Supp. 3d 1243 (N.D. Cal. 2022) ......................................................... 34

*Ehret v. Uber Techs., Inc.*,
 68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......................................................... 24

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ................................................................................................. 19

*Ferrington v. McAfee, Inc.*,
    No. 10-CV-01455-LHK, 2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) ...................... 33

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) ................................................................................ 33

*Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*,
    769 F. App'x 429 (9th Cir. 2019) ....................................................................................... 22

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ......................................................................................................... 19

*Frezza v. Google Inc.*,
    No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ................ 25

*Garcia v. Roadrunner Transp. Servs.*,
    No. 20-cv-06918-MMC, 2021 U.S. Dist. LEXIS 135253 (N.D. Cal. July 20, 2021) ................... 16

*Gentges v. Trend Micro Inc.*,
    No. C 11-5574 SBA, 2012 U.S. Dist. LEXIS 94714 (N.D. Cal. June 9, 2012) ...................... 23, 35

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ..................................................................................................... 11, 12

*Granfield v. Nvidia Corp.*,
    No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678 (N.D. Cal. July 11, 2012) ...................... 23, 24

*Harbut v. Monavie, Inc.*,
    No. ED CV 12-01983 TJH, 2017 U.S. Dist. LEXIS 235942 (C.D. Cal. July 10, 2017) ............... 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ....................................................................................................... 19

*Huu Nam Tran v. Metro. Life Ins. Co.*,
    408 F.3d 130 (3d Cir. 2005) ............................................................................................... 41

*Ice Cream Distribs. of Evansville v. Dreyer's Grand Ice Cream*,
    No. 09-5815 CW, 2010 U.S. Dist. LEXIS 99930 (N.D. Cal. Sep. 10, 2010) ............................ 24

*Iconlab Inc. v. Valeant Pharm. Int'l Inc.*,
    No. 8:16-cv-01321-JLS-KES, 2017 U.S. Dist. LEXIS 222574 (C.D. Cal. Apr. 25, 2017) ........... 12

*Irvine v. Kate Spade & Co.*,
    No. 16-CV-7300 (JMF), 2017 U.S. Dist. LEXIS 164165 (S.D.N.Y. Sep. 28, 2017) ................... 39

*Jacobo v. Ross Stores, Inc.*,
    No. CV-15-04701-MWF-AGR, 2016 U.S. Dist. LEXIS 86958 (C.D. Cal. Feb. 23, 2016) .......... 28

*JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China)*,
    533 F. Supp. 3d 999 (D. Or. 2021) .................................................................................. 16, 22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 26

*Konik v. Time Warner Cable*,
    No. CV 07-763 SVW, 2010 U.S. Dist. LEXIS 150908 (C.D. Cal. July 19, 2010) ...................... 35

*Kulko v. Super. Ct.*,
    436 U.S. 84 (1978) ................................................................................................................ 14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .......................................................................................................... 35

*LaCross v. Knight Transp., Inc.*,
    95 F. Supp. 3d 1199 (C.D. Cal. 2015) ........................................................................ 9, 16, 20

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig. v.*
    *Oneok, Inc.)*,
    715 F.3d 716 (9th Cir. 2013) ................................................................................................. 9

*Livingston v. Pneu-Logic Corp.*,
    No. 20-cv-07155-JCS, 2021 U.S. Dist. LEXIS 70463 (N.D. Cal. Apr. 12, 2021) ..................... 9

*Magill v. Wells Fargo Bank, N.A.*,
    No. 4:21-cv-01877 YGR, 2021 U.S. Dist. LEXIS 248891 (N.D. Cal. June 25, 2021) ............... 17

*Mai v. Supercell Oy*,
    No. 20-cv-05573-EJD, 2023 U.S. Dist. LEXIS 685 (N.D. Cal. Jan. 3, 2023) ............... 30, 33, 37

*Martelli v. Rite Aid Corp.*,
    No. 21-CV-10079 (PMH), 2023 U.S. Dist. LEXIS 26877 (S.D.N.Y. Feb. 16, 2023) ................ 39

*Mason v. Mach. Zone, Inc.*,
    140 F. Supp. 3d 457 (D. Md. 2015) ................................................................................. 23, 35

*McKinnon v. Dollar Thrifty Auto. Grp.*,
    No. 12-4457 SC, 2013 U.S. Dist. LEXIS 29095 (N.D. Cal. Mar. 4, 2013) .............................. 25

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
    No. 18-cv-02539-HSG, 2019 U.S. Dist. LEXIS 35218 (N.D. Cal. Mar. 5, 2019) ...................... 8

*Monastiero v. appMobi, Inc.*,
    No. C 13-05711 SI, 2014 U.S. Dist. LEXIS 67202 (N.D. Cal. May 15, 2014) .......................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................................. 17

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................................ 9, 15

*NetApp, Inc. v. Nimble Storage*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................................... 14

*Ochoa v. Zeroo Gravity Games LLC*,
    No. CV 22-5896-GW-ASX, 2023 U.S. Dist. LEXIS 91215 (C.D. Cal. May 24, 2023) ............... 29

*Parnell Pharms., Inc. v. Parnell, Inc.*,
    No. 5:14-cv-03158-EJD, 2015 U.S. Dist. LEXIS 134344 (N.D. Cal. Sept. 30, 2015) .............. 8, 11

*People v. Super. Ct. (J.C. Penney Corp.)*,
    34 Cal. App. 5th 376 (2019) ......................................................................... 27, 28

*Perez v. CRST Int'l*,
    No. EDCV 17-1081 VAP (SPx), 2018 U.S. Dist. LEXIS 27901 (C.D. Cal. Feb. 14, 2018) ......... 21

*Petersen v. Allstate Indem. Co.*,
    281 F.R.D. 413 (C.D. Cal. 2012) ...................................................................... 30

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ........................................................................ 42

*Phillips v. Double Down Interactive LLC*,
    173 F. Supp. 3d 731 (N.D. Ill. 2016) ................................................................ 38

*Piccioli v. Faust Heating & A/C Co.*,
    No. 2532 EDA 2022, No. 2532 EDA 2022, 2023 Pa. Super. Unpub. LEXIS 1100
    (Sup. Ct. May 5, 2023)................................................................................. 41

*Pittman v. Chick-fil-A, Inc.*,
    No. 21-CV-8041 (VM), 2022 U.S. Dist. LEXIS 133686 (S.D.N.Y. July 27, 2022) .................... 40

*Polimaster Ltd. v. RAE Sys., Inc.*,
    623 F.3d 832 (9th Cir. 2010) ......................................................................... 17

*Preira v. Bancorp Bank*,
    885 F. Supp. 2d 672 (S.D.N.Y. 2012) ................................................................. 39

*Reeves v. Niantic*,
    No. 21-cv-05883-VC, 2022 U.S. Dist. LEXIS 97140 (N.D. Cal. May 31, 2022) ............. 32, 33, 34

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ..................................................................... 19, 21

*Ristic v. Mach. Zone, Inc.*,
    No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056 (N.D. Ill. Sep. 19, 2016) ......................... 38

*Rosenberg v. Viking River Cruises, Inc.*,
    No. 2:19-cv-09691-RGK-AS, 2020 U.S. Dist. LEXIS 62294 (C.D. Cal. Mar. 23, 2020) ............ 21

*Ross v. Altria Grp., Inc.*,
    No. C 04-01453 SI, 2004 U.S. Dist. LEXIS 18558 (N.D. Cal. Sept. 3, 2004) ........................ 12, 15

*Sadiq v. Metro. Coffe Co.*,
    No. 21-cv-00747-JST, 2021 U.S. Dist. LEXIS 191292 (N.D. Cal. July 12, 2021) ........................ 9

*Sandler v. iStockphoto LP*,
    No. 2:15-cv-03659-SVW-JEM, 2016 U.S. Dist. LEXIS 31330 (C.D. Cal. Feb. 5, 2016) ....... 16, 21

*Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*,
    401 F.3d 123 (3d Cir. 2005) ................................................................................................ 41

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ............................................................................................. 26

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ......................................................................................... 36, 38

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ....................................................................................................... 39, 40

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) ........................................................................................... 36, 37

*Sollberger v. Wachovia Sec., LLC*,
    No. 09-cv-0766-AG, 2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010) ........................... 11

*Spann v. J.C. Penney Corp.*,
    307 F.R.D. 508 (C.D. Cal. 2015) ................................................................................. 27, 28, 29

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ................................................................................... *passim*

*Suski v. Marden-Kane, Inc.*,
    No. 21-cv-04539-SK, 2022 U.S. Dist. LEXIS 157448 (N.D. Cal. Aug. 31, 2022) ........................ 33

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................................. 26

*Tagoia v. Wells Fargo Bank, N.A*,
    No. 17-cv-06777-YGR, 2018 U.S. Dist. LEXIS 115687 (N.D. Cal. July 11, 2018) .................... 10

*Voodoo SAS v. SayGames LLC*,
    No. 19-cv-07480-BLF, 2020 U.S. Dist. LEXIS 121879 (N.D. Cal. July 7, 2020) ........................ 15

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................................ 14

*Washington v. Cashforiphones.Com*,
    No. 15-cv-0627-JAH (JMA), 2016 U.S. Dist. LEXIS 192253 (S.D. Cal. June 1, 2016) .............. 20

*Webb v. Carter's, Inc.*,
    No. CV 08-07367 GAF, 2009 U.S. Dist. LEXIS 137912 (C.D. Cal. June 23, 2009) ................... 25

*West v. Palo Alto Hous. Corp.*,
    No. 17-CV-00238-LHK, 2019 U.S. Dist. LEXIS 103665 (N.D. Cal. June 20, 2019) ................. 37

*Wheeler v. Marengo*,
    No. 18-CV-360-AJB(WVG), 2019 U.S. Dist. LEXIS 196957 (S.D. Cal. Nov. 13, 2019) ........... 11

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................................ 14

*Wisdom v. Easton Diamond Sports, LLC*,
    No. CV 18-4078 DSF, 2018 U.S. Dist. LEXIS 224491 (C.D. Cal. Oct. 9, 2018) ......................... 24

*Wofford v. Apple, Inc.*,
    No. 11-CV-0034 AJB NLS, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 8, 2011) .............. 33

*Wong v. PartyGaming, Ltd.*,
    589 F.3d 821 (6th Cir. 2009) ................................................................................ 22

*Wood v. Motorola Mobility, Inc.*,
    No. C-11-04409-YGR, 2012 U.S. Dist. LEXIS 34567 (N.D. Cal. Mar. 14, 2012) ...................... 10

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................ 14

*Yothers v. JFC Int'l, Inc.*,
    No. 20-cv-01657-RS, 2020 U.S. Dist. LEXIS 156470 (N.D. Cal. May 14, 2020) ................. 41, 42

*Zieger v. Wellpet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................................ 11

**Statutes**

73 Pa. C.S. § 201-3 ................................................................................ 40

15 USC § 45 ................................................................................ 37

15 USC § 52 ................................................................................ 37

California Code of Civil Procedure § 1761 ................................................................................ 32

California Code of Civil Procedure § 1770 ................................................................................ 32, 33

California Code of Civil Procedure § 410.10 ................................................................................ 11

California Business and Professions Code section 17501 ............................................................*passim*

California Penal Code § 330 ...................................................................................... 30

California Penal Code § 330.1 ................................................................................... 30

California's False Advertising Law ............................................................................. 1

Consumer Legal Remedies Act ......................................................................... *passim*

Federal Arbitration Act ..................................................................................... *passim*

N.Y. Gen. Bus. Law § 349 ........................................................................................ 39

N.Y. Gen. Bus. Law § 350 ........................................................................................ 39

Pennsylvania Unfair Trade Practices and Consumer Protection Law ................ 40, 41

Unfair Competition Law .................................................................................... *passim*

## I.   INTRODUCTION

Defendant FunPlus International AG ("FunPlus AG") is a Swiss game developer specializing in gaming applications for mobile devices.  It is indirectly owned by Defendant KingsGroup Holdings ("KingsGroup"), a Cayman Islands holding company.

In 2022 and 2023, Plaintiffs filed three separate putative class actions, on behalf of themselves and a variety of classes and subclasses, alleging that certain promotions for "packs" of additional game content, offered for sale in Defendants' games, qualified as false or deceptive advertising, in violation of California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"), in addition to New York, Washington and Pennsylvania consumer protection statutes, and asserting claims for common law fraud and unjust enrichment.  Plaintiffs admit the games at issue are available to download and play for free.  Players can also choose, but are not required to make in-game purchases of these supplemental packs that offer access to certain advantages, such as speeding up their progression in the game.

As an initial matter, Plaintiffs' claims are not properly submitted to this Court, both because the Court lacks personal jurisdiction over FunPlus AG and KingsGroup (two foreign entities with no California presence) and because, in downloading and playing the alleged games, Plaintiffs each agreed to the games' terms of use, which provide that any dispute they have with FunPlus will be adjudicated through binding individual arbitration, or in the courts of Zug, Switzerland.  Thus, the Complaints are properly dismissed under Rule 12(b)(2) and the doctrine of *forum non conveniens*.

Additionally, Rule 9(b)'s heightened pleading standard requires Plaintiffs to allege with specificity the who, what, when, where, and how of the claimed fraudulent misconduct, as well as their reasonable reliance on the alleged misrepresentations.  Each Complaint falls far short of that standard and fails to allege even the basic details necessary to support their claims, all of which sound in fraud. Plaintiffs claim they were misled as to the price, popularity, and competitive value of the advertised packs, but their Complaints are devoid of any information as to when any Plaintiffs made any specific purchase, what they purchased, and what they did or did not see and did or did not rely on in making any such purchase.  Instead, the Complaints include a collection of screenshot examples of what Plaintiffs say are misleading promotions, displayed at an unspecified time, without any specific

circumstances tied to their own experience.  Lacking the required specificity, the Complaints are properly dismissed under Rule 9(b).

Even if these pleading defects were curable (they are not), the Complaints are each also properly dismissed as a matter of law under Rule 12(b)(6).  First, the out-of-state Plaintiffs cannot pursue claims for violations of California's consumer protection laws or claims for violations of other states' laws, in California courts, absent any connection between their transactions or purported injury with California.  And all of the Plaintiffs agreed that Swiss law would govern their relationship with FunPlus AG.  Second, Plaintiffs' false advertising and fraud claims are properly dismissed as a matter of law because they fail to identify a "prevailing market price" for the at-issue *virtual* packs of additional game content, or any representations that would reasonably or materially deceive a "reasonable consumer."  To the contrary, their substantive factual allegations confirm that their purchases were caused by a desire to access various game content and move quickly through the games, not any purportedly misleading, and obviously hyperbolic, promotional statements from FunPlus.  Plaintiffs' CLRA claims also fail because the alleged virtual packs are not "tangible goods" or "services" under the CLRA, as confirmed by numerous courts in this District and Circuit.  And without an actionable predicate offense, Plaintiffs' UCL claims fail as well.  Because each of the three Complaints fail to adequately state a claim, Defendants respectfully request that they be dismissed without leave to amend.

## II.   ALLEGED FACTS AND RELEVANT PROCEDURAL BACKGROUND

### A.   The FunPlus Defendants

Plaintiffs allege that "FunPlus"—improperly defined to refer collectively to FunPlus AG and KingsGroup—"was founded in California," and "has offices in San Francisco, San Mateo, and Irvine, California." (*Prado* Compl. ¶ 26; *see also Yanez* Compl. ¶ 20; *Kelly* Compl. ¶ 19.)  They further allege that the companies' "high-level executives are also located in California, including: (a) Yitao Guan, a resident of Menlo Park and FunPlus AG's co-founder and Chief Technology Officer; (b) Yingwu Zhong (a/k/a Andy Zhong), a resident of San Francisco and co-founder and Chief Executive Officer; (c) Jeremy Horn, a resident of Los Angeles and VP Head of Innovation; (d) Wei Wang, a resident of Irvine and Chief Creative Officer; and (e) [Tong Sui Bau, a/k/a] Michael Tong, a resident of San Francisco and Chief Strategy Officer." (*Id.*)  Plaintiffs concede, however, that FunPlus AG "is a Swiss

public limited company" and that KingsGroup "is a Cayman Islands corporation." (*Prado* Compl. ¶¶ 27-28; *see also Yanez* Compl. ¶¶ 21-22; *Kelly* Compl. ¶¶ 20-21.)

Plaintiffs further claim that FunPlus has "operated through an opaque corporate structure" and allege "on information and belief" that FunPlus AG and Kings Group "conduct business or have conducted business through (i) Funplus Interactive USA Inc. d/b/a FunPlus Interactive USA LLC, a Delaware company with its principal place of business in San Francisco, California; and (ii) Imagendary USA, LLC f/k/a FunPlus Interactive USA LLC f/k/a KingsGroup USA, LLC, a Delaware company, with its principal place of business in San Francisco, California." (*Prado* Compl ¶ 29; *see also Yanez* Compl. ¶ 23; *Kelly* Compl. ¶ 22.)

Contrary to Plaintiffs' allegations, neither FunPlus AG nor KingsGroup has ever had any presence in California. FunPlus AG is a Swiss company that maintains its principal place of business in Zug, Switzerland, and has never had operations in the U.S. (*See* concurrently filed Declaration of Yingwu Zhong ("Zhong Decl."), ¶¶ 3-4.) KingsGroup is incorporated and registered to do business in the Cayman Islands, with its principal place of business in Grand Cayman, Cayman Islands. (Declaration of Tong Sui Bau ("Tong Decl."), ¶¶ 4-7.) KingsGroup is a holding company, and has never had any U.S.-based operations, including in California. (*Id*. at ¶ 7.) Neither company is registered to do business in California, maintains an office or mailing address in California, has employees in California, owns real estate in California, or pays taxes in California. (*Id*. at ¶¶ 5-6; *see also* Zhong Decl. ¶ 4.)[1] Moreover, the referenced executives Jeremy Horn, Yitao Guan, and Wei Wang are not employed by FunPlus AG or KingsGroup. (Zhong Decl. ¶ 5.) And while employed with FunPlus AG, Mr. Zhong and Mr. Tong reside in China and Hong Kong, not California. (Tong Decl. ¶ 3; Zhong Decl. ¶ 6.)

---

[1] While it is true that Imagendary USA, LLC is an indirect corporate affiliate of FunPlus AG and maintains an office in California, this entity has no involvement in the games or conduct alleged to be at issue in the Complaints. (Zhong Decl. ¶ 9.) It is a wholly distinct corporate entity that functions as a standalone research and game development studio for unrelated content. (*Id.*) In fact, Imagendary USA, LLC has not yet launched any commercially available products. (*Id.*) FunPlus AG does not, and has not done business in California under the name of Imagendary USA, LLC. (*Id.*)

### B.     The FunPlus Terms of Use

Before playing any of the mobile gaming applications referenced in the Complaints, players are required to confirm that they have read and agreed to the FunPlus Terms of Use.  (*See* Zhong Decl. ¶ 14, Ex. B.)  These terms confirm that FunPlus AG is a Swiss company and accordingly provide that the terms are to be "governed by the laws of Switzerland."  (*See*, Zhong Decl. ¶¶ 14, 24, Ex. B at § 25.)

Players also agree in Section 10 that **Virtual Items** "mean rights that [FunPlus AG] licence[s] to [players] to access or use certain features that [FunPlus AG] may make available [in its games]." (Zhong Decl., Ex. B at § 10.)  "Examples may include access to digital or unlockable content, additional or enhanced functionality (including multiplayer services), virtual assets, in-game achievements, and virtual points, coins and currencies."  (*Id.*)  When players make in-game purchases for such Virtual Items, they are granted "a personal, limited, non-transferable, non-sub-licensable, revocable and non-exclusive licence to access the selected Virtual Items."  (*Id.*)

Players further acknowledge that "Virtual Items have no monetary value and no value outside of [the games]."  (*Id.*)  They "cannot sell, trade or transfer Virtual Items, or exchange them for cash.  Any payment [made] for access to Virtual Items is non-refundable unless otherwise stated at [FunPlus AG's] sole discretion."  (*Id.*)  Players must acknowledge that the Content remains FunPlus AG's sole property and that players have "no ownership, title or other proprietary interest in and to the Content, regardless of whether [they] 'earned' or 'purchased' such Content."  (*Id*. at § 6.)

On or around February 1, 2023, FunPlus AG amended its Terms of Use to include a binding arbitration clause and class action waiver (hereinafter, the "Current Terms").  (Zhong Decl., Ex. B at §§ 24.5-24.8.)  In order to continue playing the FunPlus games (or to download and start playing, in the case of Plaintiff Kelly, *see Kelly* Compl. ¶ 18) following the update, each player was required to affirmatively press a button confirming their agreement to the Current Terms.  (Zhong Decl. ¶¶ 14-18.)  To support their claim for injunctive relief, Plaintiffs allege that their injury is "ongoing," suggesting that they have each continued playing the game and viewing the allegedly wrongful content advertisements after the terms were updated, and thus necessarily agreed to the amendments.  (*Prado* Compl. ¶¶ 137, 204, 224, 234; *Yanez* Compl. ¶¶ 117, 176, 188; *Kelly* Compl. ¶¶ 121, 180.)  For consumers outside of the U.S. and Canada—*e.g.*, Plaintiff Mazey—the Current Terms provide for

binding individual arbitration in Zurich, Switzerland, to be "administered by the Swiss Arbitration Association ('SAA') according to Swiss arbitration rules and procedures (the 'SAA Rules')." (Zhong Decl., Ex. B at §§ 24.5-24.7.)  For the remaining Plaintiffs, and all putative class members within the US and Canada, the Current Terms provide for binding individual arbitration before the American Arbitration Association ("AAA").  (*Id.* at §§ 24.8, 24.8.1-24.8.6.)  This latter group is further offered an opportunity to "opt-out" of the arbitration agreement and class action waiver, if notice is timely provided.  (*Id.* at § 24.8.3.)  As agreed, all claims not subject to arbitration "shall be resolved exclusively by and in the courts in Zug, Switzerland and in accordance with the laws of Switzerland."  (*Id.* at § 24.6.)  Prior to the adoption of the Current Terms, the Terms of Use provided for disputes to be heard in Zug, under Swiss law.  (Zhong Decl. ¶ 24, Ex. C.)

In all cases, before initiating any legal proceedings, users are required to first submit a "Notice of Dispute," and wait a period of 60 days to allow FunPlus an opportunity to resolve any dispute without being subjected to formal proceedings.  (Zhong Decl., Ex. B §§ 24.4, 24.8.4.)  FunPlus did not receive the requisite Notice of Dispute from any of the named Plaintiffs in the *Prado*, *Yanez*, or *Kelly* actions. (Zhong Decl. ¶ 23.)

### C.    The *Prado* Plaintiffs and the "State of Survival" Mobile Gaming Application

The *Prado* action is brought by named Plaintiffs Angela Prado (of California), Staci Turner (of Ohio), Kimberly Surrette (of Canada), Paul Mazey (of England), Bryan Kauffman (of Pennsylvania), Cyrenna Dewhurst (of New York), Derik Niederquell (of Washington), and Heriberto Santana (of California) on behalf of themselves and a global putative class of users of the mobile gaming application State of Survival ("SOS"), as well as six subclasses of California, Ohio, Pennsylvania, Washington, New York, and international gamers (collectively, the "*Prado* Plaintiffs").

SOS is available to download and play for free from the Google Play Store or Apple App Store. (*Prado* Compl. ¶ 38 ("users do not have to pay to play a fully functional game—the game is free to download and start playing").)  In this survival-style game, players are placed into a "State" alongside other players with the goal of upgrading the level of their "Headquarters."  (*Id.* at ¶ 49.)  Players can advance their Headquarters by upgrading buildings, locating and upgrading "heroes," and training armies.  (*Id.* at ¶¶ 43, 49-51.)  Players can achieve these milestones for free through in-game labor or

by making in-game purchases of "building materials, hero 'badges,' speed-ups," "other valuables," and "bundled groups of resources, or 'packs.'" (*Id*.)

The *Prado* Plaintiffs claim that FunPlus uses "six primary categories of deceptive pack advertisements" within SOS:

> (a) packs that offer the illusion of price discounts through the strikethrough graphics, hereafter referred to as "False Strikethrough Packs"; (b) packs that falsely advertise that a pack contains extra value by containing an extra percentage increase value relative to normal versions of the same pack, hereafter referred to as "False Bonus Packs"; (c) packs that falsely allege the limited availability of purchases, hereafter referred to as "False Limited Availability Packs"; (d) packs that falsely represent their popularity, hereafter referred to as "False Popularity Packs"; (e) graphics that falsely represent how far other players have advanced, hereafter referred to as "False Advancement Stats"; and (f) items that "randomly" generate an in-game prize once purchased, hereafter referred to as "Loot Boxes."

(*Id.* ¶ at 70.)  Plaintiffs allege that, through SOS, FunPlus develops, promotes, offers and sells these "virtual in-game items," but concedes the items "**have no real-world value**." (*Id*. at ¶¶ 1-3, 6 (emphasis added).)  Loot boxes likewise "contain only virtual items and not physical objects," and some loot box items can be purely cosmetic—for example, a "skin" or outfit for the player's avatar to wear during game play—while others may be virtual game features that enhance game play.  (*Id.* at ¶¶ 101, 109.)  Plaintiffs generally allege that they purchased a variety of in-game content, including packs and/or loot boxes within the SOS game (*id.* ¶¶ 18-25), but do not identify any representations they each viewed, what they purchased and when, or how much they spent on the transactions.  Instead, the *Prado* Complaint includes a handful of sample screenshots—with no suggestion of when these screenshots were taken, or by whom—as evidence of Defendants' alleged "deception."  (*See*, *e.g., id.* at ¶¶ 72, 79, 84, 97.)

D.     **The *Yanez* Plaintiffs and the "Frost & Flame: King of Avalon" Mobile Gaming Application**

The *Yanez* action is brought by named Plaintiffs Yovanni Yanez (of California) and Emelyn Matos (of New York) on behalf of themselves and a global putative class of users of the mobile gaming application Frost & Flame: Kings of Avalon ("KOA"), as well as two subclasses of gamers in California and New York (collectively, the "*Yanez* Plaintiffs").  Like SOS, KOA is available to download and

play for free from the Google Play Store or Apple App Store.  (*Yanez* Compl. ¶¶ 30, 32 ("users do not have to pay to play a fully functional game—the game is free to download and start playing").)  Though KOA "is a fantasy, medieval, strategy, and resource management game" featuring "knights, dragons, and evil ice creatures," the *Yanez* Plaintiffs allege it "possesses nearly identical gameplay and monetization features" to SOS.  (*Id.* at ¶ 30.)  Players are placed into a specific "Kingdom," and tasked with upgrading their "Stronghold" within their city.  (*Id.* at ¶¶ 44-45.)  Again, players can purchase in-app "packs" that afford Plaintiffs the opportunity to access different features and levels in the game more quickly.  (*Id.* at ¶ 46.)

The *Yanez* Plaintiffs allege that they purchased False Strikethrough Packs, False Percentage Packs (defined identically to the "False Bonus Packs," referenced above), and False Limited Availability Packs, each of "which have no real-world value and whose pricing is entirely determined by FunPlus." (*Id.* ¶ 6.)[2]  But again, the *Yanez* Plaintiffs offer no specific details on the representations they purport to have viewed, what they purchased and when, or how much they spent on the transactions – and include only seemingly randomly selected screenshots with no details of when they were taken or whether Plaintiffs even saw them.  (*Id.* ¶¶ 68, 76, 81.)

### E.     The *Kelly* Plaintiffs and the "Guns of Glory: Lost Island" Mobile Gaming Application

The *Kelly* action is brought by named Plaintiff Loren Kelly, a resident of California, on behalf of himself and a "global" putative class of users of the mobile gaming application Guns of Glory: Lost Island ("GOG"), as well as a California subclass (collectively, the "*Kelly* Plaintiffs").  GOG is free to download and play, and offers a historical fiction take on the resource management game model, where players aim to grow their personal "estate."  (*Kelly* Compl. ¶¶ 29, 30.)  GOG offers players a chance to purchase packs that provide access to extra content, including "building material, 'recruitment banners,' speed-ups, and other valuables" within the app, though Plaintiff concedes again these virtual game features hold no real world value and are not available or operable outside of the game itself.  (*Id.* at ¶¶

---

[2] The *Yanez* and *Kelly* Complaints generically include allegations regarding loot boxes and dark pattern advertisements, but none of the *Yanez* or *Kelly* Plaintiffs claim to have purchased loot boxes or received or viewed the allegedly deceitful notifications.

6, 36.)

Plaintiff Kelly alleges that he purchased False Strikethrough Packs, False Bonus Packs, and False Limited Availability Packs (*id.* at ¶ 18), again including unspecified screenshots from the game, without specific details regarding his own purchases and any representations he viewed or relied on in connection therewith, or context regarding the included screenshots in the Complaint.

### F.    Procedural Background

The *Prado* Plaintiffs filed their Complaint in this action first, on September 2, 2022.  (Case No. 4:22-cv-5023, ECF 1.)  They filed the operative First Amended Complaint on March 10, 2023, adding five plaintiffs and four additional claims, and withdrawing one cause of action for violations of Ohio law.  (*Id.*, ECF 41.)  The *Prado* Plaintiffs ultimately served FunPlus AG and KingsGroup on July 4, 2023 and June 22, 2023, respectively.  (*Id.*, ECF 44.)

The *Yanez* Plaintiffs filed their Complaint on May 30, 2023 (Case No. 4:23-cv-2667, ECF 1), and the *Kelly* Plaintiffs followed on August 14, 2023.  (Case No. 3:23-cv-04122, ECF 1.)  Given the overlap in defendants and allegations, the cases were related, and on September 5, 2023, the parties stipulated to a uniform briefing schedule applicable to all three cases.  (Case No. 4:22-cv-5023, ECF 51; Case No. 4:23-cv-2667, ECF 29; Case No. 3:23-cv-04122, ECF 15.)  In granting the stipulation on September 13, 2023, the Court ordered both Defendants to file a single, joint response to all three Complaints.  (Case No. 4:22-cv-5023, ECF 49, 53; Case No. 4:23-cv-2667, ECF 32; Case No. 3:23-cv-04122, ECF 19.)  This motion follows.

## III.   LEGAL STANDARDS

### A.    Under Rule 12(b)(2), Plaintiffs are Required to Establish Personal Jurisdiction as to Each Defendant for Each Claim Asserted

A motion to dismiss under Rule 12(b)(2) evaluates whether the Court has authority to exercise personal jurisdiction over the named defendants.  *See* Fed. R. Civ. P. 12(b)(2).  Claims against a defendant must be dismissed if the Court lacks personal jurisdiction over that defendant.  *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-cv-02539-HSG, 2019 U.S. Dist. LEXIS 35218, at *21 (N.D. Cal. Mar. 5, 2019).  Personal jurisdiction must be established as to each individual defendant, *Parnell Pharms., Inc. v. Parnell, Inc.*, No. 5:14-cv-03158-EJD, 2015 U.S. Dist. LEXIS 134344, at *10 (N.D.

Cal. Sept. 30, 2015) (citations omitted), and "for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig. v. Oneok, Inc.)*, 715 F.3d 716, 741 (9th Cir. 2013).

**B.     Under the Doctrine of *Forum Non Conveniens*, Dismissal is Appropriate Where Parties Contractually Agree to Another Forum**

A complaint is also subject to dismissal for improper venue under the doctrine of *forum non conveniens* when the relevant parties have contractually agreed to litigate cases in a different (non-federal) venue. *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 60-61 (2013). Forum selection clauses are presumptively valid, and should be honored "absent some compelling and countervailing reason." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-12, 15 (1972). The party challenging the clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.*; *see also Atl. Marine*, 571 U.S. at 63 ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."). A plaintiff's choice of forum "is accord[ed] no weight," *Monastiero v. appMobi, Inc.*, No. C 13-05711 SI, 2014 U.S. Dist. LEXIS 67202, at *9-10, 12 (N.D. Cal. May 15, 2014), and courts instead consider whether Plaintiffs have made a "strong showing" that: (1) the inclusion of the forum selection clause was the product of fraud, duress or overreaching (or was otherwise unconscionable); (2) enforcement would contravene a strong public policy of the forum, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that Plaintiffs will for all practical purposes be deprived of their day in court. *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015).[3]

---

[3] As with a motion to dismiss under Rule 12(b)(1), "in evaluating a motion to dismiss on *forum non conveniens* grounds, the pleadings need not be accepted as true, and facts outside the pleading may be considered." *Sadiq v. Metro. Coffee Co.*, No. 21-cv-00747-JST, 2021 U.S. Dist. LEXIS 191292, at *4 (N.D. Cal. July 12, 2021)(citations omitted); *see also Livingston v. Pneu-Logic Corp.*, No. 20-cv-07155-JCS, 2021 U.S. Dist. LEXIS 70463, at *10-11 (N.D. Cal. Apr. 12, 2021) (same).

1

2

### C.   Under Rule 12(b)(6), Plaintiffs are Required to Plead the *Prima Facie* Elements for Each Claim Asserted

3

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts supporting each

4

element of their claims, with sufficient "factual content that allows the court to draw the reasonable

5

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

6

(2009).  Mere "'labels and conclusions, and a formulaic recitation of the elements of a cause of action

7

will not do.'" *Wood v. Motorola Mobility, Inc.*, No. C-11-04409-YGR, 2012 U.S. Dist. LEXIS 34567,

8

at *6-7 (N.D. Cal. Mar. 14, 2012), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

9

The Court is not required to "assume the truth of legal conclusions merely because they are cast in the

10

form of factual allegations." *Tagoia v. Wells Fargo Bank, N.A*, No. 17-cv-06777-YGR, 2018 U.S. Dist.

11

LEXIS 115687, at *10 (N.D. Cal. July 11, 2018)(quotations omitted).  Nor should the Court assume

12

that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated

13

the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal.*

14

*State Council of Carpenters*, 459 U.S. 519, 526 (1983).

15

Where claims include allegations sounding in fraud, including claims under the CLRA, FAL,

16

UCL, and the common law, such claims "are subject to Rule 9(b)'s heightened pleading requirement[,]"

17

which "requires that the complaint allege specific facts regarding the fraudulent activity, such as the

18

time, date, place, and content of the alleged fraudulent representation, [and] how or why the

19

representation was false or misleading." *Wood*, 2012 U.S. Dist. LEXIS 34567, at *7 (internal citations

20

omitted).  Accordingly, a plaintiff must allege the "'who, what, when, where, and how' of the alleged

21

fraud." *Id.* at *8, quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

22

### IV.   ARGUMENT

23

### A.   The Complaints Should Be Dismissed under Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over KingsGroup and FunPlus AG

24

Under California's long-arm statute, the jurisdiction of a California court is coextensive with

25

the constitutional limits of federal due process.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)

26

("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over

27

persons."); *see also* Cal. Code Civ. Proc. § 410.10 (permitting courts to "exercise jurisdiction on any

28

basis not inconsistent with the Constitution of this state or of the United States.").  In order to meet

their burden to establish personal jurisdiction, Plaintiffs must establish either that (1) KingsGroup and/or FunPlus AG has contacts with California that are "so continuous and systematic as to render [each] essentially at home" here, subjecting them to general jurisdiction, or (2) KingsGroup and/or FunPlus AG engaged in the type of "purposeful availment" or "purposeful direction" that justifies the Court's exercise of specific jurisdiction, that Plaintiffs' claims arise out of KingsGroup's and/or FunPlus AG's contacts with California, and that the exercise of jurisdiction is not unreasonable. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924-25 (2011).

A plaintiff cannot establish personal jurisdiction by alleging bare jurisdictionally triggering facts without providing some evidence of their existence. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). The Court is thus to ignore conclusory allegations, "naked assertion[s] devoid of further factual enhancement," and omnibus allegations that fail to properly distinguish between the defendants. *Wheeler v. Marengo*, No. 18-CV-360-AJB(WVG), 2019 U.S. Dist. LEXIS 196957, at *4 (S.D. Cal. Nov. 13, 2019) (citing *Ashcroft*, 556 U.S. at 677)(modification in original); *accord Parnell Pharms.*, 2015 U.S. Dist. LEXIS 134344, at *11 ("general and conclusory allegations . . . will not be considered"). And where a party makes jurisdictional arguments generally against all or multiple "Defendants" together, such allegations are insufficient to establish jurisdiction over any individual party. *See Sollberger v. Wachovia Sec., LLC*, No. 09-cv-0766-AG, 2010 U.S. Dist. LEXIS 66233, at *11-13 (C.D. Cal. June 30, 2010) (condemning "shotgun pleadings," *i.e.*, "cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong"); *Zieger v. Wellpet LLC*, 304 F. Supp. 3d 837, 848-49 (N.D. Cal. 2018) (granting motion to dismiss for lack of personal jurisdiction where "plaintiffs fail[ed] to make any specific factual allegations regarding [two defendants], and instead ma[d]e only general allegations the group[ed] defendants together").

When deciding a motion to dismiss for lack of personal jurisdiction, the Court properly considers a defendant's declarations and other competent evidence, and must reject allegations of the complaint that are contradicted by such evidence. *See Iconlab Inc. v. Valeant Pharm. Int'l Inc.*, No. 8:16-cv-01321-JLS-KES, 2017 U.S. Dist. LEXIS 222574, at *9 (C.D. Cal. Apr. 25, 2017) ("[T]he court

may consider the pleadings as well as any declarations submitted by the parties when deciding a motion to dismiss for lack of personal jurisdiction.").   Here, Plaintiffs' allegations are addressed only to a conflated "FunPlus," defined to include both KingsGroup and FunPlus AG, and thus lack the requisite specificity to establish personal jurisdiction over either defendant.

### 1.   Neither KingsGroup nor FunPlus AG are "at home" in California

General jurisdiction is present where a defendant can be found "essentially at home" in a state, including where it maintains corporate offices in the state, has its principal place of business in the state, employs personnel in the state, owns real estate in the state, pays taxes in the state, maintains files in the state, or oversees the management of business from the state.  *See Daimler*, 571 U.S. at 138-39. Here, the Complaints contain no allegations to establish general jurisdiction over either entity.  The only reference specific to KingsGroup in any of the *Prado*, *Yanez*, or *Kelly* Complaints is the allegation that "Defendant KingsGroup Holdings is a Cayman Islands corporation." (*Prado* Compl. ¶ 28; *Yanez* Compl. ¶ 22; *Kelly* Compl. ¶ 21.)   Likewise, Plaintiffs' only allegation to establish jurisdiction specifically as to FunPlus AG is that FunPlus AG "is a Swiss public limited company" and that it "was previously known as (i) KingsGroup Europe SA, (ii) KingsGroup International AG, and (iii) KingsGroup International SA.  Its directors include Yingwu Zhong (a/k/a Andy Zhong)." (*Prado* Compl. ¶ 27; *Yanez* Compl. ¶ 21; *Kelly* Compl. ¶ 20.)[4]  These specific allegations certainly do not establish contacts that are "so 'continuous and systematic' as to render [it] essentially at home" in California; in fact, they do not evidence a connection to California at all.  *Goodyear*, 564 U.S. at 919; *see also Daimler*, 571 U.S. at 138-39 (rejecting theory of general jurisdiction as to foreign company that was not incorporated in California and did not have its principal place of business in California, even where the company's subsidiary made sizable sales into the forum); *Ross v. Altria Grp., Inc.*, No. C 04-01453 SI, 2004 U.S. Dist. LEXIS 18558, at *11 (N.D. Cal. Sept. 3, 2004) (finding no general jurisdiction over an out-of-state holding company).

---

[4] While the Complaint alleges three former names, KingsGroup International AG and KingsGroup International SA are one in the same, the name differences reflect registration in different languages, as required under Swiss law, with both "AG" and "SA" meaning "limited company" in German and French, respectively.

Plaintiffs' allegations as to the amalgamated "FunPlus"—even if they could be used to establish jurisdiction as to the individual entities—also fail to provide a basis for the exercise of general jurisdiction, in large part because they are patently false.  Each of the Complaints vaguely alleges that "FunPlus was founded in California . . . has offices in San Francisco, San Mateo, and Irvine, California," and that "various high-level executives are located in California."  (*Prado* Compl. ¶ 26; *Yanez* Compl. ¶ 20; *Kelly* Compl. ¶ 19.)   But jurisdiction is not proven by allegations of bare jurisdictionally triggering facts without some evidence of their truth.  *See Amba Mktg. Sys.*, 551 F.2d at 787.  Indeed, here, Plaintiffs' allegations are not only facially insufficient to establish general jurisdiction, but they are also verifiably false and belied by the concurrently-filed sworn testimony. (*See generally* Tong Decl.; Zhong Decl.)  KingsGroup is not a citizen of California, but rather is a Cayman Islands corporation with its principal place of business in Grand Cayman, Cayman Islands. (*See* Tong Decl. ¶ 4.)   The company has no offices in California, does not own any property in California, and has no employees in California.  (*Id.* at ¶ 5.)  Indeed, KingsGroup is a holding company that does not conduct ***any*** business directly with consumers, has not directly developed, marketed, advertised or sold any mobile application games in California or elsewhere, and does not operate or oversee the operation of any mobile application games, including SOS, KOA, or GOG.  (*See id.* at ¶ 8.)  Similarly, FunPlus AG is not a citizen of California, but rather is a Swiss company, with its principal place of business in Zug, Switzerland.  (*See* Zhong Decl. ¶ 3.)  FunPlus AG has no offices in California (or anywhere in the United States), is not registered to do business in California, has no mailing address in California, has no employees in California, owns no property in California, and does not pay taxes in California.  (*Id.* at ¶ 4.)  Moreover, Jeremy Horn, Yitao Guan, and Wei Wang are not employed by either entity.  Tong Sui Bau and Yingwu Zhong, though employed by FunPlus AG, live and work in Hong Kong and Beijing, not California.  (*Id.* at ¶¶ 6-7; Tong Decl. ¶ 3.)

Because Plaintiffs do not allege facts to demonstrate that KingsGroup or FunPlus AG are subject to general personal jurisdiction in California, and because the concurrently-filed declarations of Tong Sui Bau and Yingwu Zhong confirm such facts could **never** be alleged, general personal jurisdiction is lacking. *See Amiri v. Dyncorp Int'l*, No. 14-CV-03333 SC, 2015 U.S. Dist. LEXIS 3981,

at *16-18 (N.D. Cal. Jan. 13, 2015) (no general personal jurisdiction despite existence of four contracts to be performed within California and 239 California employees).

### 2.   Neither KingsGroup nor FunPlus AG has sufficient "minimum contacts" with the forum to justify the exercise of specific personal jurisdiction

In the absence of general jurisdiction, Plaintiffs must allege sufficient facts to establish specific jurisdiction over each defendant.  To do so, Plaintiffs must show that KingsGroup and FunPlus AG, each on their own, has sufficient "minimum contacts" with California such that the exercise of jurisdiction over it "does not offend traditional notions of fair play and substantial justice."  *NetApp, Inc. v. Nimble Storage*, 41 F. Supp. 3d 816, 824 (N.D. Cal. 2014) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)).  Said differently, their "conduct and connection with [California]" must be such that they "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  "Mere injury to a forum resident" is an insufficient connection to permit an exercise of personal jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  Rather, "the relationship [to California] must arise out of contacts that the 'defendant *himself*' [or here, itself] creates with the forum state."  *Id.* at 284 (quotations omitted) (emphasis in original); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017) (citing *Walden,* 571 U.S. at 284) (holding that a court may exercise specific jurisdiction over a defendant only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State.").  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state."  *Id.*; *see also Kulko v. Super. Ct.*, 436 U.S. 84, 93 (1978) (declining to "find personal jurisdiction in a State . . . merely because [the plaintiff] was residing there").

Here, the Complaints fail to allege any conduct that would subject KingsGroup or FunPlus AG to specific personal jurisdiction in California.  Plaintiffs' jurisdictional allegations are limited to the unsubstantiated legal conclusions that "Defendants," collectively, "have offices and key executives in this District, regularly conduct business in this District, and have extensive contacts in this forum." (*Prado* Compl. ¶ 31; *Yanez* Compl. ¶ 25; *Kelly* Compl. ¶ 24.)  As discussed above, these particular allegations are simply not true.  (*See* Tong Decl. ¶¶ 4-8; Zhong Decl. ¶¶ 3-7.)  But even if they were

(they are not), Plaintiffs fail to establish that KingsGroup or FunPlus AG took **any** action directed at California specifically related to the alleged claims.   Thus, Plaintiffs fail to meet their burden to establish specific personal jurisdiction.  *See, e.g., Ross*, 2004 U.S Dist. LEXIS 18558, at *12 (finding no personal jurisdiction when the plaintiffs' "claims [were] based on the sale, manufacture, distribution, marketing, and advertising of Crystal Light . . . [and the defendant was] a holding company that [did] not manufacture, sell, or market any product, [so the] plaintiff's claims [could not] arise out of [the defendant's] activities."); *Voodoo SAS v. SayGames LLC*, No. 19-cv-07480-BLF, 2020 U.S. Dist. LEXIS 121879, at *9-20 (N.D. Cal. July 7, 2020) (French gaming company not subject to personal jurisdiction in California despite its targeting of the U.S. market and profiting from downloads and purchases by California users).

### B.   Plaintiffs' Claims Should Be Dismissed for Improper Venue, to Be Refiled in Individual Arbitration or the Courts of Zug, Switzerland

If the Court nonetheless determines it has personal jurisdiction over KingsGroup and/or FunPlus AG, the Complaints should nonetheless be dismissed under the doctrine of *forum non conveniens* in favor of individual arbitration, or—in the event Plaintiffs' claims are for any reason not subject to arbitration—to be refiled in the courts in Zug, Switzerland, as outlined in the Current Terms.

The Supreme Court has been clear that contractually agreed forum selection provisions are presumptively valid, and should be honored "absent some compelling and countervailing reason." *Bremen,* 407 U.S. at 9-12, 15; *see also Atlantic Marine*, 571 U.S. at 60, 63-64 (finding that a forum-selection clause should "be 'given controlling weight in all but the most exceptional cases.'"). "[O]nly under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied."  *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018)(citations omitted).

In evaluating whether such extraordinary and unusual circumstances exist, Plaintiffs' subsequent choice of forum carries no weight, and courts instead consider whether Plaintiffs have made the requisite "strong showing" that either the forum selection clause was procured by fraud, the enforcement would contravene a strong public policy of the forum, or trial in the contracted-for arena would be so gravely difficult and inconvenient that it would deprive Plaintiffs of their day in court.

*LaCross*, 95 F. Supp. 3d at 1203 ("The U.S. Supreme Court has held that forum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can 'clearly show that enforcement would be unreasonable and unjust.'") (citing *Bremen*, 407 U.S. at 12-13, 15, 18); *see also Sun,* 901 F.3d at 1087 ("Unlike the situation where there is no forum-selection clause, the plaintiff 'must bear the burden of showing why the court should not transfer [or dismiss] the case to the forum to which the parties agreed.'") (quoting *Atlantic Marine*, 571 U.S. at 64).

As part of this determination, the court should not consider private-interest factors such as cost and inconvenience to the parties (*i.e.*, "practical problems" imposed by the chosen venue), or whether the Current Terms are a non-negotiable contract of adhesion. *Atl. Marine Constr. Co*., 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation…[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting."); *Garcia v. Roadrunner Transp. Servs.*, No. 20-cv-06918-MMC, 2021 U.S. Dist. LEXIS 135253, at *6-7 (N.D. Cal. July 20, 2021) (employee bound by forum selection clause in employment agreement because "a differential in power or education," even on "a non-negotiated contract[,]" does "not vitiate a forum selection clause"); *Sandler v. iStockphoto LP*, No. 2:15-cv-03659-SVW-JEM, 2016 U.S. Dist. LEXIS 31330, at *6-7 (C.D. Cal. Feb. 5, 2016) (enforcing venue clause in online clickwrap agreement).  Plaintiffs have offered no evidence that their agreement to the forum selection clause in the Current (or former) Terms is unenforceable, nor that its enforcement would contravene a strong public policy or effectively deprive them of their day in court – as such, dismissal is proper for *forum non conveniens.  See, e.g., JPaulJones, L.P. v. Zurich Gen. Ins. Co. (China)*, 533 F. Supp. 3d 999, 1012 (D. Or. 2021) (finding arbitration in Shanghai or litigation in Chinese courts to be an adequate and available alternative forum).

### 3.      **FunPlus AG's Terms require that disputes are resolved through binding, individual arbitration**

SOS, KOA, and GOG were designed so that, at least after December 23, 2021, a pop-up notice was presented to all users in downloading and continuing to play the game, requiring each to confirm

that they had read and agreed to be bound by the FunPlus AG Terms of Use. (*See* Zhong Decl. at ¶ 14-15.)  In order to continue playing these games after the Terms of Use were amended on February 1, 2023 to include an arbitration agreement and class action waiver, each player was required to affirmatively press a button confirming their agreement to the Current Terms. (*Id*. at ¶¶ 15-19, Ex. B at §§ 24.5-24.8.)  The specific arbitration provision agreed to varies depending on the residency of the individual plaintiffs. (Zhong Decl., Ex. B at §§ 24.5-24.7.)

An arbitration provision is a type of forum selection clause. *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010) ("The requirement of arbitration at the defendant's site is effectively a forum selection clause, in which the parties agreed to arbitrate at the location of a defendant's principal place of business.").  This choice of forum is presumptively enforceable, *id.*, and the Federal Arbitration Act ("FAA") expresses the strong federal policy in favor of arbitration; providing that "a 'written provision' in a contract providing for 'settle[ment] by arbitration' of 'a controversy . . . arising out of' that 'contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 49 (2015), quoting 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (the FAA embodies "a liberal federal policy favoring arbitration agreements"); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we ***rigorously enforce agreements to arbitrate***.") (emphasis added).  Once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25; *see also Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877 YGR, 2021 U.S. Dist. LEXIS 248891 (N.D. Cal. June 25, 2021) (Gonzalez Rogers, J.) ("The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms.") (citations omitted).

The Current Terms applicable to each of the games allegedly played by Plaintiffs include a binding individual arbitration provision providing for arbitration of Disputes—defined to include "all disputes, claims or controversies . . . arising out of or relating to these Terms, any of our Services and

their marketing, or the relationship between you, or anyone using your FunPlus account or otherwise acting on your behalf, and us, or any of our current or former affiliates, whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, including the validity, enforceability or scope of this 'Disputes' section[,]" either before the AAA or SAA depending on the user's residency.  (Zhong Decl., Ex. B at § 24.)  In addition, the Current Terms provide that "ANY PROCEEDING, WHETHER IN ARBITRATION OR IN COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION."  (*Id.* at §§ 24.6, 24.8.6.)

The arbitration provision in the Current Terms are valid and enforceable.  On its face, the provision reflects the parties' intent to adjudicate any dispute arising between them through binding arbitration before the AAA or SAA.  "[A]rbitration is a matter of contract," determined under state law. *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted). California law enforces contracts formed in Internet transactions in which parties must click a button indicating they agree to the contract terms, as is the case here.  *See Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 U.S. Dist. LEXIS 156658, at *9 (S.D. Cal. Nov. 5, 2014) (plaintiff agreed to be bound by website terms and conditions, where the sentence "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions" appeared immediately above the "PLACE ORDER" button); *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 26471, at *14-15 (N.D. Cal. Feb. 24, 2017) (plaintiff accepted website terms and conditions by submitting his purchase where the terms and conditions were hyperlinked directly above the button and indicated that clicking "Submit Secure Purchase" constituted acceptance of those terms).  Plaintiffs agreed to be bound by the Current Terms, in exchange for continued access to the games.[5]

---

[5] At a minimum, the arbitration provision "clearly and unmistakably" delegates gateway questions of arbitrability to the arbitrator, expressly including disputes regarding "the validity, enforceability or scope of this 'Disputes' section" (Zhong Decl., Ex. B), within the scope of coverage.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing *AT&T Techs., Inc. v. Commc'ns Workers of*

There is likewise no evidence that the provision was a product of fraud, duress or overreaching, that its enforcement would contravene any strong public policy of California, or would deprive Plaintiffs of their day in Court. To establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement "must show that *the inclusion of that clause in the contract* was the product of fraud or coercion." *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998)(emphasis in original)(citations omitted). While it is true that the arbitration provision was implemented after the *Prado* Complaint was filed, the provision is broad (covering "all disputes, claims or controversies … includ[ing] claims that accrued before you entered into these Terms") and was not hidden or disguised, but was disclosed in bold letters in the first section of the Current Terms. Both the *Yanez* and *Kelly* Complaints were filed well after the FunPlus AG Terms were updated, and players agreed to arbitrate their disputes with FunPlus AG – indeed, Plaintiff Kelly did not even *begin* playing GOG until after the Current Terms went into effect. (*Kelly* Compl. ¶ 18.)

Additionally, enforcement of the arbitration agreement does not impugn any strong California public policy and would not deprive Plaintiffs of a reasonable avenue to remedy their alleged claims. To the contrary, Ninth Circuit courts routinely enforce clickwrap arbitration agreements in consumer contracts, including dismissing and/or compelling arbitration of consumer protection claims improperly raised in court on behalf of a putative class. *Crawford*, 2014 U.S. Dist. LEXIS 156658, at *9; *DeVries*, 2017 U.S. Dist. LEXIS 26471, at *14-15; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) (Federal Arbitration Act requires courts to enforce arbitration terms "providing for individualized proceedings"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011) (class action waivers in favor of individual arbitration are enforceable under the FAA); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (holding that there is no "entitlement to class proceedings for the vindication of statutory rights"). As such, the Complaints should be dismissed in favor of arbitration.

---

*Am.*, 475 U.S. 643, 649-50 (1986)); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability', such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

1

2

### 4.    To the extent the arbitration agreement is unenforceable as to any Plaintiffs, their only alternative venue is the court in Zug, Switzerland

3

4

5

6

7

8

9

    To the extent the Court determines the arbitration agreement is not enforceable as to any of the individual Plaintiffs, then such Plaintiffs and any similarly situated putative class members, must pursue their claims in Zug, Switzerland – not this Court.  Like agreements to arbitrate, forum selection clauses identifying a specific court to adjudicate disputes are presumptively valid.  *LaCross*, 95 F. Supp. 3d at 1203.  The burden is on Plaintiffs to show that the agreed Swiss venue will deprive them of an adequate avenue to resolve their claims, *Sun*, 901 F.3d at 1087, and nothing in the Complaints identifies **any** reason why Switzerland is an inadequate forum.[6]

10

11

12

13

14

15

16

17

18

    Here, Plaintiffs and FunPlus agreed that all claims not subject to arbitration "shall be resolved exclusively by and in the courts in Zug, Switzerland and in accordance with the laws of Switzerland." (Zhong Decl., Ex. B at § 24.7; *see also id.* § 24.8.6 ("If a court or arbitrator determines, in an action between you and us, that this class action waiver is unenforceable, this arbitration agreement will not apply to you.").)  The prior version of the FunPlus AG Terms of Use likewise provided for the adjudication of disputes in Zug.  (Zhong Decl. Decl. ¶ 24, Ex. C.)  Assuming the truth of Plaintiffs' allegations that they played the relevant games, there can be no doubt that each Plaintiff agreed to at least one set of Terms of Use.  (*Id.*)  And unlike the arbitration provision, Plaintiffs had no choice to "opt-out" of the agreed judicial forum.  (*See* Zhong Decl., Ex. B.)

19

20

21

22

23

    As before, Plaintiffs cannot meet their "heavy burden" to avoid enforcement of the forum selection clause.  Plaintiffs have not alleged that they could not bring their suit in Zug, or that being forced to litigate there would wholly deprive them of an opportunity to seek relief for their claims.  *See Sun*, 901 F.3d at 1092 ("the fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the

24

25

26

27

28

---

[6] For purposes of this motion and in the interest of brevity, Defendants have not identified all of the remedies available to Plaintiffs under Swiss law, but to the extent the Court determines more information is required on this point, Defendants will gladly submit supplemental briefing. Moreover, even in the face of the Swiss choice-of-law provision, a Swiss court could nonetheless apply California or any other law Plaintiffs argue is applicable. *Washington v. Cashforiphones.Com*, No. 15-cv-0627-JAH (JMA), 2016 U.S. Dist. LEXIS 192253 (S.D. Cal. June 1, 2016) ("[T]he resolution of which state's laws apply is a separate issue for the [selected] court to determine.").

plaintiff to seek some relief.")(citations omitted); *see also Richards*, 135 F.3d at 1296 ("[Venue] clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit").  And in agreeing to the clause, Plaintiffs waived any right to contest the inconvenience or added expense of litigating outside of California.  *Atl. Marine Constr. Co*., 571 U.S. at 64.  Ninth Circuit courts regularly enforce venue clauses in consumer contracts, including in the context of CLRA, UCL and other related class actions. *See, e.g., Perez v. CRST Int'l*, No. EDCV 17-1081 VAP (SPx), 2018 U.S. Dist. LEXIS 27901, at *7-16 (C.D. Cal. Feb. 14, 2018) (enforcing Iowa venue clause and transferring UCL and PAGA claims, even where Defendants knew of plaintiff's limited English proficiency and made no efforts to ensure that he understood the meaning of the forum-selection clause); *Cooper v. Slice Techs., Inc.*, No. 17-cv-02340-LB, 2017 U.S. Dist. LEXIS 149480, at *8-12 (N.D. Cal. Sep. 14, 2017) (California's public interest in enforcement of its consumer data privacy laws did not defeat enforcement of venue clause in terms of use); *Amberger v. Legacy Capital Corp.*, No. 16-cv-05622-JSC, 2017 U.S. Dist. LEXIS 8392, at *9-12 (N.D. Cal. Jan. 20, 2017) (enforcing forum selection clause and ordering transfer of complaint alleging CLRA claim to New York); *Sandler*, 2016 U.S. Dist. LEXIS 31330, at *6-11 (enforcing Canadian venue clause in UCL class action).

This is particularly true as to *Prado* Plaintiffs Turner, Surrette, Mazey, Kauffman, Dewhurst, and Niederquell, as well as the purported Ohio, Pennsylvania, New York, Washington, and international subclasses, and *Yanez* Plaintiff Matos and the New York subclass she purports to represent (collectively, the "Non-California Plaintiffs"), because California bears an even less significant interest in adjudicating the grievances of the citizens of other states and countries.  *See Rosenberg v. Viking River Cruises, Inc.*, No. 2:19-cv-09691-RGK-AS, 2020 U.S. Dist. LEXIS 62294, at *8-9 (C.D. Cal. Mar. 23, 2020) (finding Switzerland to be an adequate alternative forum for CLRA claims brought by Florida and Pennsylvania residents, because "an alternative forum need not provide the same degree of relief to be considered adequate"); *Cosmo Imp. & Exp., LLC v. Reliant Grp. & Cas. Ins. Icc*, No. 8:21-cv-00657-JVS (JDEx), 2021 U.S. Dist. LEXIS 250684, *20 (C.D. Cal. Oct. 27, 2021) (enforcing St. Lucia forum selection clause as to Wyoming residents because plaintiffs were not California residents the public policy waivers of consumer rights under the CLRA were inapplicable).  For example, the

Sixth Circuit—home to Plaintiff Turner and the Ohio subclass—considered a highly analogous case; a class action filed against a Gibraltar-based online gaming company, alleging violations of Ohio consumer protection laws, among other claims. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 824 (6th Cir. 2009). There, the terms and conditions included a forum selection clause that specified all disputes would be subject to the exclusive jurisdiction of the courts of Gibraltar. *Id.* at 823. In granting the motion to dismiss for *forum non conveniens*, the court held that "the unavailability of representative litigation would not render the forum ineffective." *Id.* at 829 ("Plaintiffs have not alleged that they could not bring the suit in Gibraltar, but only that they could not bring it in class form. Thus, they have not shown that Gibraltar would be an ineffective or unfair forum.").

Plaintiffs have offered no evidence that that they would be unable to seek adequate relief in arbitration or Swiss courts, so their Complaints should be dismissed with prejudice, to be refiled in arbitration or in the Courts of Zug, Switzerland. *Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap.*, *LLC*, 769 F. App'x 429, 431-32 (9th Cir. 2019) (affirming dismissal without leave to amend where the plaintiff "presented no compelling argument that its amended complaint would not have been subject to the forum-selection clauses[,]" thus any amendment "would have been subject to dismissal under the same *forum non conveniens* analysis[.]"); *JPaulJones*, 533 F. Supp. 3d at 1012 (dismissing complaint with prejudice under doctrine of *forum non conveniens*).

## C. The Complaints Each Fail to State a Claim for Relief and Should Be Dismissed Under Rule 12(b)(6)

### 1. Plaintiffs' California statutory claims should be dismissed as to all Non-California Plaintiffs

As a threshold matter, the Court can quickly dispense of the claims brought under California statutory law on behalf of the seven Non-California Plaintiffs and putative class members, because the California statutes under which Plaintiffs bring those claims may not be applied extraterritorially.[7] *See Harbut v. Monavie, Inc.*, No. ED CV 12-01983 TJH (DTBx), 2017 U.S. Dist. LEXIS 235942, at *3

---

[7] This section assumes, solely for purposes of argument, that the subclasses' claims can be brought in California in the first place (which they cannot), and that the Plaintiffs have not all agreed to a Swiss choice of law clause (which they have) as discussed *supra*. Again, Defendants would be happy to submit supplemental briefing on this point if the Court prefers.

(C.D. Cal. July 10, 2017) (dismissing CLRA, FAL, and UCL claims where plaintiffs did not allege that defendants "engaged in conduct in the State of California" and therefore the court could "not apply California law to the claims of non-resident parties based on conduct occurring outside of the state"); *Churchill Vill., LLC v. GE Co.*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000) (finding that "only California consumers can proceed on a claim under the [FAL]" where representations that harmed out-of-state residents were not made by defendant from California). Likewise, none of the Plaintiffs can represent a "global" class in connection with the alleged violations of California's consumer protection laws. *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 464- 65 (D. Md. 2015) (California consumer protection statutes did not apply extraterritorially where "Plaintiff [wa]s not a California resident; she d[id] not allege that she downloaded or played [the video game at issue] in California; and the sole connection she ha[d] drawn between Defendant and California is the fact that Defendant is headquartered there."); *Gentges v. Trend Micro Inc*., No. C 11-5574 SBA, 2012 U.S. Dist. LEXIS 94714, at* 16 (N.D. Cal. June 9, 2012) ("[S]tate and federal courts have concluded that the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California.")(citation omitted).

Plaintiffs allege that California law should be applied to all Plaintiffs and putative class members, "regardless of where the class member resides[,]" because "California has the greatest interest in policing corporate conduct within the State." (*See Prado* Compl. ¶¶ 15, 141, 146; *Yanez* Compl. ¶¶ 15, 121, 126; *Kelly* Compl. ¶¶ 15, 125, 126.) But "[i]n a class action lawsuit alleging violations of consumer protection laws, 'each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.'" *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678, at *9 (N.D. Cal. July 11, 2012) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012)). Thus, in order to establish standing as non-California residents under the CLRA, FAL, or UCL, the Non-California Plaintiffs must allege that either (1) their injuries occurred in California, or (2) the Defendants' conduct occurred in (or "emanated from") California. *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSx), 2018 U.S. Dist. LEXIS 224491, at *10 (C.D. Cal. Oct. 9, 2018) (analyzing UCL and FAL); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130-31 (N.D. Cal. 2014) (analyzing CLRA

and UCL).   Bare allegations of these elements, without factual support, are insufficient to allege standing. *Ice Cream Distribs. of Evansville v. Dreyer's Grand Ice Cream*, No. 09-5815 CW, 2010 U.S. Dist. LEXIS 99930, at *22-23 (N.D. Cal. Sep. 10, 2010).

Here, seven of the eleven named Plaintiffs and all (both) of the Defendants reside outside of California.  There are no factual allegations to suggest that any of the Non-California Plaintiffs were injured or transacted business in California, as opposed to their respective home states and countries. Likewise, Plaintiffs concede that neither defendant is a California entity—admitting instead that these entities are incorporated in Switzerland and the Cayman Islands—and make only conclusory claims "upon information and belief" that the allegedly "false advertisements and misleading statements emanated from the State of California" because some executives and offices of the defendants are alleged (wrongly) to be located in the State.  (*See Prado* Compl. ¶¶ 16, 26-28, 143-145; *Yanez* Compl. ¶¶ 16, 20-22, 123-125.)  Plaintiffs not only fail to allege any facts to substantiate their purported "belief" that the supposed presence of offices or executives in California means that the complained-of advertising statements were prepared in or emanated from California, but the only *specific* factual allegations regarding KingsGroup and FunPlus AG tend to suggest the opposite.  (*Prado* Compl. ¶¶ 26-28; *Yanez* Compl. ¶¶ 20-22.)  Absent a clear, factual, California connection, Plaintiffs' claims under the CLRA, FAL, and UCL should be dismissed.[8]   *See Ice Cream Distribs.*, 2010 U.S. Dist. LEXIS 99930, at *22-23 (dismissing UCL claim based on "bare" allegations that the fraudulent statements were directed from California); *McKinnon v. Dollar Thrifty Auto. Grp.*, No. 12-4457 SC, 2013 U.S. Dist. LEXIS 29095, at *15-17 (N.D. Cal. Mar. 4, 2013) (dismissing UCL and CLRA claims where no wrongful conduct occurred in California and harms arose in Oklahoma); *Churchill Vill*, 169 F. Supp. 2d at 1127 (finding that "only California consumers can proceed on a claim under the [FAL]" where representations that harmed out-of-state residents were not made by defendant from California); *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462, at *17 (N.D. Cal. Apr. 22,

---

[8]For the avoidance of doubt, Defendants maintain that all of the Plaintiffs, not only those residing outside of California, have agreed that Swiss law applies to their transactions with FunPlus. But, to the extent the Court reaches the Plaintiffs' claims, the laws of California should not be extended to any consumer not residing in California.

2013) (dismissing UCL claim where "the *transactions* at the center of the dispute … occurred in the plaintiffs' state of North Carolina") (emphasis in original).

### 2.  Plaintiffs' claims under New York, Pennsylvania, and Washington Law are not properly raised among entirely foreign parties in California court

The New York, Pennsylvania, and Washington plaintiffs and putative class members are precluded from seeking adjudication of their respective state law claims in California courts.  *See Webb v. Carter's, Inc.*, No. CV 08-07367 GAF (MANx), 2009 U.S. Dist. LEXIS 137912, *34 (C.D. Cal. June 23, 2009) (stating that the Court was "unaware of . . . any authority that would permit nonresident plaintiffs who lack viable claims under California law to seek the application of another state's laws in a California court.").  As the court in *Webb* explained, "it is only logical that if a nonresident plaintiff cannot avail herself of California law in a California court under present circumstances, then a fortiori, that plaintiff cannot avail herself of the law of some other jurisdiction in that same court." *Id.* (emphasis in original).  Because the Non-California Plaintiffs have failed to establish that they are entitled to seek the application of non-California law to acts that occurred outside of California in a California court, their respective state law claims must be dismissed.

### 3.  The *Prado*, *Yanez*, and *Kelly* Complaints each fail to meet the heightened pleading standard for claims sounding in fraud

Plaintiffs' claims based on FAL, CLRA, and UCL violations, as well as their common law fraud and other state consumer protection claims, are each subject to dismissal, because each, though premised on allegedly "deceptive" conduct from FunPlus, fails to satisfy the heightened pleading standard for claims sounding in fraud under Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud."  To satisfy this heightened standard, a plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In other words, any claim sounding in fraud must state the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124.

Here, the *Prado*, *Yanez*, and *Kelly* Complaints each fail to allege these crucial details.  While the Complaints include generic allegations and screenshots of sample advertisements (*see Prado*

Compl. ¶¶ 70-97, 115-121; *Yanez* Compl. ¶¶ 64-88; *Kelly* Compl. ¶¶ 62-92), they lack any specific allegations regarding the advertisements Plaintiffs purport to have actually viewed, when they viewed them, the price they paid (or what they claim the prevailing market price to have been at the time), or the supposedly fraudulent statements they personally saw and relied upon.  Nor do the Plaintiffs allege when the screenshots included in their respective Complaints were taken, including how near in time they appeared to each Plaintiff's alleged purchases.

The Complaints still further fail to allege *which defendant* made the purportedly unlawful statements, and instead continuously lumps them together as "FunPlus."  This combined pleading tactic fails to put either defendant on notice of the specific allegations raised against it.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.")(quotations and citations omitted).  For this reason alone, Plaintiffs' fraud-based claims should be dismissed in their entirety.

### 4.   Plaintiffs fail to state a cognizable claim of false advertising

Even if Plaintiffs' false advertising claims satisfied their pleading obligations, these claims fail nonetheless.  Plaintiffs explicitly premise their FAL claim on section 17501 of the California Business and Professions Code.  (*See Prado* Compl. ¶¶ 8, 155, 157, 160, 178; *Yanez* Compl. ¶¶ 8, 135, 140, 154; *Kelly* Compl. ¶¶ 8, 139, 141, 144, 158.)  That statute provides:

> For the purpose of this article the worth or value of any thing advertised is the **prevailing market price**, wholesale if the offer is at **wholesale**, retail if the offer is at **retail**, at the time of publication of such advertisement in the **locality** wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).  In other words, "the prohibition [in section 17501] bans any advertised claim regarding the former price of an item (1) unless the advertised former price was 'the prevailing market price as [ ] defined [in section 17501] within the three months next immediately preceding the publication of the advertisement' or (2) unless the advertised former price was the prevailing market price—as defined in section 17501—on a clearly specified date." *People v. Super. Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 394–95 (2019), *as modified on denial of reh'g* (May 6, 2019).

Courts have held that the term "prevailing market price" means "the actual selling price of the article in the **open market**." *J.C. Penney Corp.*, 34 Cal. App. 5th at 396 (emphasis added).  "[T]he prevailing market price [is] determined by the actual sales prices of similar goods, or the same good, on the 'open local market.'" *Id.* at 412.  Based on the statutory language, "the prevailing market price must take into account where, and at what price, the item in question is offered for sale." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 526 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016).  "In many circumstances, [the] local sales prices for a particular item, in all stores offering it for sale, is an appropriate basis for the calculation of prevailing market price." *Spann*, 307 F.R.D. at 526.

Here, the Complaints never allege what the "prevailing market price" would be for the "packs" with which the Plaintiffs take issue.  To the contrary, the Complaints solely compare the prices of these packs with their "advertised former reference price."  (*See Prado* Compl. ¶ 73; *Yanez* Compl. ¶ 69; *Kelly* Compl. ¶ 67.)  However, courts have consistently held that "the prevailing market price is **not** simply the retailer's actual original price." *Spann,* 307 F.R.D. at 526 (emphasis added).  Indeed, the California Court of Appeal has held that, based on the language of section 17501, simply equating "the retailer's own 'prevailing' price" with the "prevailing market price is 'untenable.'" *J.C. Penney Corp.*, 34 Cal. App. 5th at 397.  Doing so would "disregard[] the common meaning of the term 'prevailing market price,' in the statute and would render a portion of that standard surplusage . . . [H]ad the Legislature intended the phrase to refer to the price offered by the business responsible for the advertisement, it could easily have done so, and omitted the use of the terms 'market' and 'prevailing market price.'" *Id*.  Also, while the Complaints claim that the FAL applies to not only the False Strikethrough Packs, but also the False Bonus Packs, the False Limited Availability Packs, and the

False Popularity Packs, as a matter of logic, section 17501 **cannot** apply to this content because they do not advertise any discounted price at all, but instead advertise other features for sale.  (*Prado* Compl. ¶ 179; *Yanez* Compl. ¶ 155; *Kelly* Compl. ¶ 159.)

Accordingly, Plaintiffs have failed to plead an essential element of their section 17501 claim, which requires its dismissal.  *See Jacobo v. Ross Stores, Inc.*, No. CV-15-04701-MWF-AGR, 2016 U.S. Dist. LEXIS 86958, at \*10 (C.D. Cal. Feb. 23, 2016) ("Nowhere, however, does the FAC explain how Defendants' comparative reference prices are inflated or why they do not accurately reflect prevailing market prices.  As a result, the FAC fails to satisfy Rule 9(b)'s heightened pleading requirements and is subject to dismissal.").

Furthermore, as a matter of both law and logic, Plaintiffs **cannot** plead the "prevailing market price" of the in-game purchases at issue because FunPlus is not competing in an external market for sales of the alleged packs.  In reality, these "packs" providing access to additional game content are fundamentally different from the goods and services covered by section 17501.  They are licenses to access certain game features, sold exclusively within a single app and for exclusive use within that app (*i.e.*, SOS, KOA, or GOG only).  (*See, e.g., Prado* Compl. ¶¶ 6, 39; *Yanez* Compl. ¶¶ 6, 33; *Kelly* Compl. ¶¶ 6, 31.)  The packs and content unlocked thereby are unavailable in any other forum, and there are no "similar goods" that could be used for the same purpose (*i.e.*, to upgrade one's in-game SOS/KOA/GOG experience in that particular app).  Accordingly, there is no "open market" at all, and—fatally for Plaintiffs' claims—no "prevailing market price" either.  *J.C. Penney Corp.*, 34 Cal. App. 5th at 396.  In fact, Plaintiffs essentially concede this point by admitting that "the advertised 'original' pricing does **not** reflect the prevailing market retail pricing for these virtual in-game items…[.]"  (*Prado* Compl. ¶ 6 (emphasis added); *see also Yanez* Compl. ¶ 6; *Kelly* Compl. ¶ 6.)

Indeed, no court has ever expressly held that section 17501 should be extended to apply to virtual in-game features that constitute a license to access software content.  *See, e.g., Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-ASX, 2023 U.S. Dist. LEXIS 91215, at \*19-24 (C.D. Cal. May 24, 2023) (addressing the plaintiff's Rule 9(b) pleading obligations, but not reaching the question).  Ordinary principles of statutory interpretation counsel against this court being the first to do so here.  "'A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the

statute a reasonable construction conforming to that intent.  In interpreting a statute to determine legislative intent, a court looks first to the words of the statute.'  Further, the 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the legislature did not intend.  Thus, the intent prevails over the letter, and the letter will, if possible, be read as to conform to the spirit of the act.'"  *Spann*, 307 F.R.D. at 525-26 (internal citations omitted).

The plain language of section 17501 suggests that the statute was never intended to apply to a license to access in-game content like that at issue here, as attempting to construe the statute this way would result in an absurdity.  Despite the statue's language, there is no "wholesale" or "retail" version of the packs (or the in-game content they include), nor could there be—they are in-game licenses that can only be purchased within the given app for that specific game experience (SOS, KOA, or GOG). Cal. Bus. & Prof. Code § 17501.  In addition, there is no "locality" in which the advertisements are published; the advertisements are viewable everywhere in the world where users can download and use the app. *Id*.

Moreover, the Current Terms clearly disclaim any notion that the content is a "thing" of "value." To the contrary, the Current Terms make clear that users do not own anything in the game, and only lease a license to access them.  (*See* Zhong Decl., Ex. B at § 6.)  The Current Terms also state that "Virtual Items have no monetary value and no value outside of our Services," and—notably—Plaintiffs concede the same.  (*See* Zhong Decl., Ex. B at § 10; *see also Prado* Compl. ¶ 6; *Yanez* Compl. ¶ 6; *Kelly* Compl. ¶ 6 (conceding that the virtual in-game items "have no real-world value and whose pricing is entirely determined by FunPlus.").)

In other contexts, California courts have consistently held that in-game items do not qualify as things of value that are covered by ordinary consumer protection laws.  *See, e.g.*, *Mai v. Supercell Oy*, No. 20-cv-05573-EJD, 2023 U.S. Dist. LEXIS 685, at *15 (N.D. Cal. Jan. 3, 2023) ("the Court concludes that Supercell's loot boxes are not illegal slot machines or controlled games under California Penal Code §§ 330a, 330b, 330.1, or 337j because they are not 'things of value.'"); *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2022 U.S. Dist. LEXIS 4791, at *40-41 (N.D. Cal. Jan. 10, 2022) (same); *see also* Section C(6)(a), *supra*.  In the face of the FAL's statutory language, the Court should follow this commonsense approach and decline to extend section 17501 to virtual in-game licensed content.

5. **Plaintiffs fail to state a claim for common law fraud**

These allegations similarly cannot support a claim for common law fraud.  To state a *prima facie* claim for fraud, a plaintiff must allege (1) a knowingly false representation by the defendant, (2) an intent to deceive or induce reliance, (3) justifiable reliance by the Plaintiffs, and (4) resulting damages.  *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012).  Plaintiffs' non-conclusory **factual** allegations make clear that they did not justifiably rely on any of the alleged representations, and that even if they did, such reliance was not a material factor in their course of action.  (*See, e.g.*, *Prado* Compl. ¶¶ 51-55, 77; *Yanez* Compl. ¶¶ 46-50, 74; *Kelly* Compl. ¶¶ 44-48, 72.)  And to the extent they did, such reliance was patently unreasonable.

Plaintiffs' own allegations also suggest they would have purchased access to the additional content no matter what price or quantity it was offered at, or how that price was presented.  For example, they allege they "would not have purchased **many** of the False Strikethrough Packs that they purchased" if they had known the reference price was false – suggesting that in at least **some** cases they false price was immaterial to their purchasing decision.  (*Prado* Compl. ¶ 77 (emphasis added); *see also Yanez* Compl. ¶ 74; *Kelly* Compl. ¶ 72.)  And their remaining allegations regarding the game design confirm that Plaintiffs were going to make purchases to access the content regardless of what representations were placed alongside the offering.  (*Prado* Compl. ¶¶ 51-55; *Yanez* Compl. ¶¶ 46-50; *Kelly* Compl. ¶¶ 44-48.)  Plaintiffs allege that "in order to progress past a certain level in the game it is **necessary** to purchase in-app 'packs' that contain the required items to level up one's account in the game." (*Prado* Compl. ¶ 51 (emphasis added) (noting that "these essential items require spending real money"); *see also id.* ¶ 54 ("without making an in-app purchase, the user is at a standstill"); *Yanez* Compl. ¶¶ 46, 49; *Kelly* Compl. ¶¶ 44, 47.)  According to Plaintiffs, because users "are accustomed to short wait times" to progress their games, they are "predisposed to make an in-app purchase" to achieve this result—*i.e.*, the purchases were not actually necessary to continue playing the game, but rather the Plaintiffs made the purchases because they individually **chose** to move through the game faster—and they were going to make the purchases no matter what.  (*Prado* Compl. ¶ 55; *Yanez* Compl. ¶ 50; *Kelly* Compl. ¶ 48.)

Additionally, any actual reliance was not "reasonable."  Plaintiffs allege they were deceived by

"False Bonus Packs," which advertised a "red bubble" containing a percentage number, usually in the multi-thousands.  (*See, e.g., Prado* Compl. ¶ 80; *Yanez* Compl. ¶ 77; *Kelly* Compl. ¶ 75.)  Plaintiffs claim that this "bubble" containing "2423%" or other massive percentage numbers, "indicate[s] to a reasonable consumer that this specific pack is **discounted** [often at over 95% of the crossed out price] because it contains a 2423% **increase in value**." (*Yanez* Compl. ¶ 77 (emphasis added); *see also Kelly* Compl. ¶ 75 (alleging a reasonable belief a pack was discounted "because it contains a 7,500% in the value or quantity of items").)  These graphics include no details regarding what the percentage represents and it defies logic that a company would **discount** a product because of an **increase** in value.

Plaintiffs further claim to have been deceived by "Limited Availability Packs," citing the example that certain packs are available "Only Once!"  (*See, e.g.*, *Kelly* Compl. ¶ 79.)  Plaintiffs allege that this language creates artificial scarcity as "ostensibly depriv[ing] competitors from accessing the same packs." (*Id.*)  Nothing in this language, however, warrants this leap in logic.  If anything, it suggests that Plaintiffs will be able to buy the pack at that price "only once," not that it is only available one time to all users in the game simultaneously.  Plaintiffs do not allege that this allegation is even false.

Likewise, Plaintiffs cannot allege they were harmed by any such reliance – indeed, they received exactly the virtual resources they sought to receive, at a price they agreed to pay.  *See Coffee*, 2022 U.S. Dist. LEXIS 4791, at *31.  As such, Plaintiffs fraud claims should also be dismissed for failure to state a claim.

### 6.   <u>Plaintiffs fail to state a claim for relief under the CLRA</u>

Each of the Complaints also fails to state a claim for relief under the CLRA.  By its terms, the CLRA applies only to "transaction[s]" resulting in the "sale or lease of goods or services" – with "goods" referring to "tangible chattels bought or leased primarily for personal, family, or household purposes . . ." and "services" meaning "work, labor, [or] . . . services furnished in connection with the sale or repair of goods."  Cal. Civ. Code §§ 1770, 1761(a)-(b)(emphasis added).  While Plaintiffs generically allege that SOS, KOA, and GOG, and the in-app purchases available therein "are a 'good' or 'service' within the meaning of [the CLRA]" (*Prado* Compl. ¶ 184; *Yanez* Compl. ¶ 160; *Kelly* Compl. ¶ 164), the Complaints' substantive allegations suggest that Plaintiffs' CLRA claims are based

on FunPlus's purported representations surrounding the sale of the virtual "packs." (*Prado* Compl. ¶¶ 4, 39, 45, 51, 184-90; *Yanez* Compl. ¶¶ 4, 33, 39, 46, 160-66; *Kelly* Compl. ¶¶ 4, 31, 44, 164-70.) Specifically, Plaintiffs allege that the purported False Limited Availability Packs, False Bonus Packs, and False Strikethrough packs are unlawfully marketed as having characteristics, uses, benefits, or quantities that they did not have, or conferring rights and obligations, that they did not. (*Prado* Compl. ¶¶ 184-90; *Yanez* Compl. ¶¶ 160-66; *Kelly* Compl. ¶¶ 164-70.) Plaintiffs also allege that FunPlus advertised these packs without the intent to sell them as advertised and made false or misleading representations of price reductions, all in violation of the CLRA. (*Id.*)

None of these alleged statements can support a claim under the CLRA, however, because the CLRA does not apply to the sale of virtual, intangible goods. *See* Cal. Civ. Code § 1761(a) (the CLRA applies to "tangible chattels"); *see also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (Gonzalez Rogers, J.) (virtual items are "digital" and not "tangible" and thus not subject to the CLRA). Likewise, the CLRA does not consider such purchases covered "services" as the statute defines that term. *Reeves v. Niantic*, No. 21-cv-05883-VC, 2022 U.S. Dist. LEXIS 97140, at *4-5 (N.D. Cal. May 31, 2022).

> a.   *Virtual Items and Digital Content are not "goods" or "services" as defined by the CLRA*

First, Plaintiffs' CLRA claim fails because it is premised on the sale of entirely virtual content, which—by Plaintiffs' own admission are "not physical objects" and "have no real-world value." (*Prado* Compl. ¶¶ 6, 101; *Yanez* Compl. ¶¶ 6, 92; *Kelly* Compl. ¶¶ 6, 96.) Overwhelming authority, including the precedents of this Court, makes clear that virtual content, including virtual currency and other products and game features available for purchase and "ownership" only in entirely virtual worlds, are "digital," not "tangible" – and therefore fail to satisfy the "tangible chattel" requirement to be a "good" or "services" under the CLRA. *See Doe*, 435 F.Supp.3d at 1046 ("[T]he virtual currency at issue is not a good or service" and virtual items, such as "'supplies' and 'ammunition,'" are "digital" rather than "tangible"); *see also Mai*, 2023 U.S. Dist. LEXIS 685, at *8-9 (dismissing CLRA claim predicated on Defendant's "sale of virtual currency, loot boxes, and services in providing the games and selling the lootboxes" because "virtual currency is not a good or service for purposes of the

CLRA."); *Reeves v. Niantic, Inc.*, No. 21-cv-05883-VC, 2022 U.S. Dist. LEXIS 97140, at \*5 (N.D. Cal. May 3, 2022) ("When a consumer purchases a virtual certificate to exchange for virtual goods in a virtual world, they are not buying anything that resembles a 'service' as the [CLRA] defines that term. They are buying a 'good,' albeit an intangible one that is not covered by [the CLRA.]"); *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 U.S. Dist. LEXIS 157448, at \*21-23 (N.D. Cal. Aug. 31, 2022) (cryptocurrency not a good and facilitating the sale of cryptocurrency not a service under the CLRA.); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 996 (N.D. Cal. 2012) (digital currency not a good or service under CLRA); *Wofford v. Apple, Inc.*, No. 11-CV-0034 AJB NLS, 2011 U.S. Dist. LEXIS 129852, at \*7 (S.D. Cal. Nov. 8, 2011) (free-to-download software not a tangible good or service subject to the CLRA); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 U.S. Dist. LEXIS 106600, at \*2-3 (N.D. Cal. Oct. 5, 2010) (software not a good or service under the CLRA).

Plaintiffs' bare assertion that the digital content SOS, KOA, and GOG are goods or services (*Prado* Compl. ¶ 183, *Yanez* Compl. ¶ 160, *Kelly* Compl. ¶ 164) is no more than a (false) legal conclusion that the Court "is not bound to accept as true." *See Twombly*, 550 U.S. at 555. And outside the sale of "packs," Plaintiffs fail to identify any other "transaction" with FunPlus that they purport resulted in the "sale or lease" of any CLRA "goods" or "services." Cal. Civ. Code § 1770(a). Instead, Plaintiffs concede the SOS, KOA, and GOG games are "**free** to download and start playing" and that "**users do not have to pay to play a fully functional game**[.]" (*Prado* Compl. ¶ 38 (emphasis added); *see also Yanez* Compl. ¶ 32; *Kelly* Compl. ¶ 30.) As such, any alleged transaction between Plaintiffs and FunPlus in connection with Plaintiffs' download of the games "was not intended to result in a 'sale or lease' because [it] was provided free of charge." *Wofford*, 2011 U.S. Dist. LEXIS 129852 at \*6 ("Plaintiff fails to state a claim under the CLRA, because the *free* download of iOS4 on Plaintiffs' [] iPhone does not meet the CLRA's 'sale or lease' requirement.") (emphasis in original).

What is more, Plaintiffs agreed and acknowledged that what they were purchasing in-game was a license to access various features of FunPlus AG's game content. (Zhong Decl., Ex. B at §§ 6, 10.) The two cases in this District that have left the door open for CLRA claims to proceed based on video game content arose in connection with substantially different game offerings. For example, this Court previously held that the Epic Games's Fortnite "**may** [have been] a cross-over product" (into the realm

of the CLRA), because unlike traditional software, the game offered "a colorful virtual world where [millions of people] meet, play, talk, compete, dance, and even attend concerts and other cultural events." *C.W. v. Epic Games*, No. 19-cv-03629-YGR, 2020 U.S. Dist. LEXIS 162490, at *13 (emphasis added) (ultimately dismissing the CLRA claim with prejudice on other grounds). Likewise, the game at issue in *Doe v. Roblox*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022) operated as an open source, "online 'metaverse' in which users control avatars of themselves" and are able to **generate their own content** within the virtual Roblox world. 602 F. Supp. 3d at 1250 (describing Roblox's "services" as "provid[ing] access to its metaverse."). Here, Plaintiffs' allege that SOS, GOG, and KOA are fictional strategy games, operating in a closed virtual universe with a set game "script" that players aim to progress though. (*See Prado* Compl. ¶¶ 36, 49-51; *Yanez* Compl. ¶¶ 30, 44-46; *Kelly* Compl. ¶¶ 29, 42-44.) Plainly, the players of FunPlus games are purchasing digital content (akin to the software, discussed above) not access to a "metaverse" or other digital **service**. *See also Reeves*, 2022 U.S. Dist. LEXIS 97140, at *4 (dismissing CLRA claim relating to purchases of virtual content and noting that "[p]erhaps the California legislature should amend the CLRA to remove the word 'tangible' from the definition of 'goods' . . . [b]ut until that happens, courts should not shoehorn transactions involving the purchase of intangible foods into the definition of 'services.'").

Because Plaintiffs' CLRA claims are predicated entirely on the purchase of virtual, intangible game content, they should be dismissed.

## 7.    Plaintiffs fail to state a claim for relief under the UCL

To advance a claim under the UCL, a plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice…" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). Here, Plaintiffs' UCL claims necessarily fail, both because they cannot allege an economic injury attributable to either Defendant's purported misconduct and because their allegations fail to identify any actionable unlawful, unfair, or fraudulent conduct. *Mason*, 140 F. Supp. 3d at 465.

1

2

          a.     *Plaintiffs fail to allege they suffered an actionable economic injury and*
                 *thus lack statutory standing under the UCL*

3    In order for consumers to have standing to bring a UCL claim, they must allege facts

4    demonstrating an economic injury caused by the allegedly unlawful or unfair business practice.  *See*

5    *Dang v. Samsung Elecs. Co.*, No. 14-CV-00532-LHK, 2018 U.S. Dist. LEXIS 204471, at *26 (N.D.

6    Cal. Dec. 3, 2018).  Plaintiffs have not adequately pled either the "economic injury" or "causation"

7    requirements of UCL standing.

8    The UCL requires Plaintiffs to demonstrate "actual reliance" on the challenged practices, and

9    to show that such practices were "an immediate cause of [their] injury-producing conduct."  *Konik v.*

10   *Time Warner Cable,* No. CV 07-763 SVW (RZx), 2010 U.S. Dist. LEXIS 150908, at *13 (C.D. Cal.

11   July 19, 2010).  In the context of claims based on false advertising, this means that each named plaintiff

12   must show that the defendant's misrepresentation or nondisclosure was "material" to and an immediate

13   cause of their harm.  *Gentges*, 2012 U.S. Dist. LEXIS 94714, at *18.  In the absence of a *material* false

14   representation, "[a] plaintiff who has received the benefit of his bargain has 'no standing under the

15   UCL.'"  *Mason*, 140 F. Supp. 3d at 464-466 (citations omitted).

16   The Complaints allege that Plaintiffs each bought access to certain content with real money and

17   received precisely the content they understood they were buying.  Recognizing that there was no defect

18   or difference in the expected versus received quality of this content, Plaintiffs instead allege that they

19   were harmed because the "'discounted' access offered for sale in the packs did not give them the

20   anticipated competitive edge against their opponents" and/or because they purchased packs

21   "defensively (to protect against becoming overpowered by opponents who they believed had been able

22   to take advantage of purportedly limited-time bonuses)" and thus that they "were deprived of the benefit

23   of their bargains, because the threat itself was a fabrication." (*Prado* Compl ¶¶ 172-173; *Yanez* Compl.

24   ¶¶ 148-149; *Kelly* Compl. ¶¶ 152-153.)  This logic fails for multiple reasons.

25   First, Plaintiffs' non-conclusory allegations make clear that the alleged advertising was not a

26   material cause of their purchases – but that such purchases were "necessary" and to progress quickly

27   in the game, *i.e.*, if Plaintiffs wanted to continue playing the game at the desired speed, the purchases

28   were deemed "essential" by the Plaintiffs. (*See Prado* Compl. ¶¶ 51, 54-55; *Yanez* Compl. ¶¶ 46, 49-

50; *Kelly* Compl. ¶¶ 44, 47-48.)  Second, as discussed above, the marketing statements are not actually deceptive to a reasonable person – Plaintiffs' unwarranted and speculative to leaps of logics regarding potential competitive advantage should not have led Plaintiffs to form a materially different expectation in their purchase from what they ultimately received.  *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1140 (2020) (the bare claim that a statement is "likely to deceive reasonable consumers" is a legal conclusion not a factual allegation); *Coy v. Lilith Games (Shanghai) Co.*, No. 19-cv-08192-JD, 2022 U.S. Dist. LEXIS 142625, at *5-8 (N.D. Cal. Aug. 9, 2022) (plaintiffs speculative assumptions about the result of virtual loot boxes did not support a claim under the UCL, FAL, or CLRA).  Third, Plaintiffs' allegations suggest that even after learning the alleged truth regarding the representations, Plaintiffs continued to purchase the packs.  (*See Prado* Compl. ¶¶ 137, 204, 224, 234; 234; *Yanez* Compl. ¶¶ 117, 176, 188; *Kelly* Compl. ¶¶ 121, 180.)  Finally, a lack of competitive advantage in an entirely virtual world is not an **economic** injury.  Plaintiffs concede that the content they purchased "ha[d] no real-world value," and thus Plaintiffs necessarily do not engage with SOS, KOA, or GOG for the prospect of economic gain (either through the acquisition of packs or loot boxes, or competitive progress).  Absent an economic injury, Plaintiffs' UCL claim fails.

### b.  *Plaintiffs fail to allege FunPlus's conduct was unlawful*

The UCL's "unlawful" prong covers "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001).  It is thus fairly said that the UCL "borrows" violations of other laws and treats them as "unlawful" practices independently actionable under the unfair competition law.  *Id.* at 718. Where the allegedly wrongful conduct is not otherwise unlawful, a Plaintiff cannot state a claim under the unlawful prong of the UCL.  *Id*.

Plaintiffs allege that FunPlus's sale of the allegedly deceptive "packs" violates the FTC Act (codified at 15 USC §§ 45, 52 and 16 CFR § 233.1), the FAL, and the CLRA, because Defendants misrepresent the existence of a sale or suggest the ability to purchase more items or game features than

normal for the same price.[9]  (*See Prado* Compl. ¶¶156-160, *Yanez* Compl. ¶¶ 137-140; *Kelly* Compl. ¶¶ 141-144.)  But for all of the reasons previously discussed, Plaintiffs allegations are insufficient to establish that FunPlus's resource pack offerings violated any of these statutes.

<blockquote>c.   Plaintiffs' allegations of "unfairness" are based on the same conduct alleged under the "unlawful" prong</blockquote>

The definition of an "unfair" business practice is not clearly settled, but "it is not unlimited." *Smith*, 93 Cal. App. 4th at 719.  "Courts may not simply impose their own notions of the day as to what is fair or unfair[,]" and specific legislation "may limit the judiciary's power to declare conduct unfair." *Id*.

Although the Complaints generally allege a violation under the "unfair" prong of the UCL (*Prado* Compl. ¶¶ 161-166; *Yanez* Compl. ¶¶ 141-142; *Kelly* Compl. ¶¶ 145-146), their substantive allegations overlap almost entirely with the business practices addressed in the "unlawful" prong. Plaintiffs claim that FunPlus's allegedly deceptive "pack" advertisements also violated the "unfair" prong of the UCL, by falsely suggesting discounts, increased resources, and competitive advantage purportedly offered thereby.  (*See, e.g.*, *id.*)  These allegations also fail under the UCL "unfair" prong, however, as they are derivative of, and entirely dependent on, the same representations Plaintiffs allege are *unlawfully* deceptive.  Where an "unlawful prong claim cannot survive, [the] unfair prong also must fail" when based on the same alleged conduct.  *See West v. Palo Alto Hous. Corp*., No. 17-CV-00238-LHK, 2019 U.S. Dist. LEXIS 103665, at *76 (N.D. Cal. June 20, 2019); *Mai,* 2023 U.S. Dist. LEXIS 685, at *17 (finding "'complete overlap' between the conduct underlying Plaintiffs' allegations of Supercell's unlawful and unfair actions, and [that] therefore Plaintiffs' UCL claim for unfairness necessarily fails"); *Coffee*, 2022 U.S. Dist. LEXIS 4791, at *41-42 (finding the only difference between the plaintiffs' "unlawful" and "unfair" UCL claims was "Plaintiff's characterization of Loot Boxes as illegal or merely immoral").

---

[9] Plaintiffs also vaguely allege that "loot boxes" and "dark pattern" notifications purportedly utilized in the alleged games are unlawful under the UCL, but offer no substantive, non-conclusory allegations identifying specifically what it is about these features that makes them unlawful.  (*See, e.g., Prado* Compl. ¶ 157.)  And none of the *Yanez* or *Kelly* Plaintiffs even claim to have encountered these features. (*Yanez* Compl. ¶¶ 18-19; *Kelly* Compl. ¶ 18.)

Plaintiffs attempt to distinguish their "unfair" allegations from those under the "unlawful" prong by vaguely suggesting that FunPlus "also violated the 'unfair prong' . . . by engaging in predatory practices designed to foster gambling addiction in consumers." (*Prado* Compl. ¶ 166; *Yanez* Compl. ¶ 143; *Kelly* Compl. ¶ 147.)  But courts have rejected similar "unfair" claims against developers of mobile video games because consumers like Plaintiffs elect to play these games at their own discretion, because they are never forced to make purchases in order to play any of these games, and because they could have opted for other forms of entertainment.  *See Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (rejecting argument that virtual casino constituted "immoral, . . . unethical, oppressive, [and] unscrupulous conduct" or exploited "psychological triggers associated with gambling and addiction" because plaintiff "could have picked other forms of entertainment");  *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056, at *12 (N.D. Ill. Sep. 19, 2016) ("[W]hile any type of addiction is unfortunate, this Court . . . does not read the [Illinois version of the California UCL] to protect [plaintiff] from his own decision to play" the loot box feature within the Game of War video game).  This logic applies with equal force here, and Plaintiffs have thus failed to allege any "unfair" conduct by FunPlus.

### d.   Plaintiffs fail to allege FunPlus's conduct was fraudulent

The fraudulent prong of the UCL and the FAL overlap substantially, such that the Plaintiffs' pleading burden is largely the same under both statutes.  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020).  To prevail on a claim under the fraudulent prong based on false advertising practices, the plaintiff must show that members of the public are likely to be deceived.  *Id.* at 1135.  For the same reasons as the CLRA and FAL claims discussed above, Plaintiffs' claim under the "fraudulent" prong too fails.

### 8.   Plaintiffs fail to state a claim for relief under N.Y. Gen. Bus. Law §§ 349 and 350 (*Prado* and *Yanez* New York Subclasses only)

*Prado* Plaintiff Dewhurst and *Yanez* Plaintiff Matos, each on behalf of themselves and a putative subclass of New Yorkers, allege that FunPlus is also subject to liability under New York General Business Law sections 349 and 350.  To plead an injury pursuant to either section, a plaintiff must allege that, as a result of a materially misleading practice, they "purchased a product and did not receive

the full value of [their] purchase." *Martelli v. Rite Aid Corp.*, No. 21-CV-10079 (PMH), 2023 U.S. Dist. LEXIS 26877, at *7 (S.D.N.Y. Feb. 16, 2023) (citation omitted). These Plaintiffs' allegations, however, do not demonstrate that they suffered an injury sufficient to bring their claims under the ambit of section 349 or 350.

"In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury." *Id*. Instead, a plaintiff "must plead something more than the defendant's deception...[.]" *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012). New York courts have routinely rejected misrepresentation claims based solely on a theory that the defendant's misrepresentation deprived the plaintiff of an opportunity to make an informed choice as to whether to buy the product. *See, e.g.*, *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (finding that a theory that "defendants' deception prevented [plaintiffs] from making free and informed choices as consumers" is "legally flawed" because it characterized the "deception as injury."); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (3d Dep't 2007) (finding that plaintiff would not have purchased the product absent seller's deceptive commercial practices was not sufficient to allege an injury within meaning of § 349).

Here, Plaintiffs' injury theory relies on their allegation that they would not have purchased the packs had they known about the allegedly deceptive advertising – not that the content was actually somehow less valuable than the amount paid for it. (*See Prado* Compl. ¶¶ 23, 221-222; *Yanez* Compl. ¶¶ 19, 185-186.) But, disappointed bargain-hunters do not suffer any actual injuries for purposes of sections 349 and 350 simply because they did not get as good a deal as they expected. *See DaCorta v. Am. Retail Grp., Inc.*, No. 16-CV-1748 (NSR), 2018 U.S. Dist. LEXIS 10733, at *15-19 (S.D.N.Y. Jan. 23, 2018); *Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 U.S. Dist. LEXIS 164165, at *9-12 (S.D.N.Y. Sep. 28, 2017); *see also Pittman v. Chick-fil-A, Inc.*, No. 21-CV-8041 (VM), 2022 U.S. Dist. LEXIS 133686, at *15-16 (S.D.N.Y. July 27, 2022) (finding plaintiff failed to allege injury when the complaint did not allege the plaintiff received a service worth less than the value she paid). Plaintiffs only allege the packs were worth less than the **original** list price, which they admit they did not pay. Thus, they have not sufficiently alleged an injury within meaning of sections 349 or 350. *See Small*, 94 N.Y.2d at 56.

9.  **Plaintiffs fail to state a claim for relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (*Prado* Pennsylvania Subclass only)**

*Prado* Plaintiff Kauffman also brings a claim for an alleged violation of the Pennsylvania Unfair Practices and Consumer Protection Law ("UTPCPL") on behalf of himself and a putative class of Pennsylvania residents, but this claim also fails to state a cause for relief. The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. C.S. § 201-3. Plaintiff Kauffman alleges he was deceived by FunPlus's marketing statements, and led to believe he was gaining added value through discounts, access to extra content, and an advantage over competitors. (*Prado* Compl. ¶¶ 212-215.)

For example, Plaintiff Kauffman alleges that he was deceived by False Bonus and Strikethrough Packs. (*Id.* ¶ 213-214.) While he offers no allegations as to which packs **he** actually viewed and claims to have been deceived by, the *Prado* Complaint includes a handful of sample screenshots of these pack types. (*See, e.g.*, *id.* ¶¶ 72, 79.) In one example, FunPlus allegedly suggests a 99% discount from a crossed out reference price ($997.40 USD, marked down to $9.99), and in another, the advertisement reflects a bubble graphic with the number "3960%." (*Id.*) But these statements are so obviously hyperbolic that no reasonable consumer would be justified in relying on them.

Under Pennsylvania law, "[p]uffery is distinguishable from misdescriptions or false representations of specific characteristics of a product" and as such, "is not actionable." *Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA, Inc.*, No. 12cv1572, 2013 U.S. Dist. LEXIS 102999, at *6 (W.D. Pa. July 23, 2013) (citations omitted). Statements are deemed to be "puffery" where they include hyperbolic boasting or bluster that no reasonable consumer would believe to be true. *Piccioli v. Faust Heating & A/C Co.*, No. 2532 EDA 2022, 2023 Pa. Super. Unpub. LEXIS 1100, at *15 (Sup. Ct. May 5, 2023). Although "the determination as to whether a statement is puffery is often a question of fact to be resolved by the finder of fact," there are instances "where the answer is so clear that it may be decided as a matter of law." *Commonwealth v. Golden Gate Nat'l Senior Care, LLC*, 194 A.3d 1010, 1024 (Pa. 2018). Such is the case here, as no reasonable consumer could believe that a company would offer their products at 1% of their market value or sell packs with a multi-thousand percentage multiplier of extra "value," and particularly not repeatedly, "for years," as Plaintiff alleges. (*Prado*

Compl. ¶¶ 5, 72, 79-80.)

The UTPCPL claim also fails because neither Plaintiff Kauffman nor any member of the Pennsylvania subclass could have **justifiably** relied on any of the identified statements in making their purchases, given the clear hyperbole. *See Huu Nam Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 141 (3d Cir. 2005) (To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance); *see also Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) ("'[A] plaintiff bringing an action under the UTPCPL must prove . . . reliance . . . with respect to all subsections of the UTPCPL[.]'").  As such, Plaintiff Kauffman's UTPCPL claim should be dismissed.

### 10.   Plaintiffs fail to establish that Defendants were unjustly enriched by their alleged conduct

Finally, Plaintiffs' unjust enrichment claim should be dismissed because it is duplicative of their defective UCL and CLRA claims, both of which, if adequately pled, would provide an adequate remedy at law.  *See Yothers v. JFC Int'l, Inc.*, No. 20-cv-01657-RS, 2020 U.S. Dist. LEXIS 156470, at *17 (N.D. Cal. May 14, 2020) (dismissing unjust enrichment claims when plaintiff failed to plead predicate claims, including CLRA and UCL, with requisite particularity); *Balzer v. Wal-Mart Stores, Inc.*, No. CV 14-9779-JFW (PJWx), 2015 U.S. Dist. LEXIS 25714, at *15-16 (C.D. Cal. Feb. 25, 2015) (collecting cases and dismissing quasi-contract claim with prejudice because it "allege[d] no facts not already covered by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy").  But even viewed separately, Plaintiffs cannot plead the required elements of unjust receipt and retention of a benefit at the expense of another "through fraud, coercion, or request," *Yothers*, 2020 U.S. Dist. LEXIS 156470, at *17, because Plaintiffs could not possibly have purchased the content for less than they paid, and thus they received the benefit of their bargain.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).

## V.   CONCLUSION

For the foregoing reasons, FunPlus AG and KingsGroup respectfully request the Court dismiss the *Prado¸ Yanez*, and *Kelly* Complaints without leave to amend.

1

Dated: October 25, 2023                    Respectfully submitted,

2

**BAKER & McKENZIE LLP**

3

4

By: */s/ Teresa H. Michaud*

Teresa H. Michaud

5

Sara Victoria M. Pitt

Paul Chander

6

Desirée N. Hunter-Reay

7

Attorneys for Defendants

8

FUNPLUS INTERNATIONAL AG and
KINGSGROUP HOLDINGS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28